**Thomas M. KAVANAGH and Eugene F. Black, Plaintiffs,**

v.

**Sanford A. BROWN, Treasurer of Michigan, Otis M. Smith, Auditor General of Michigan, and Ira Polley, Controller of the Michigan State Department of Administration, Defendants.**

**Civ. A. No. 21517.**

United States District Court
E. D. Michigan, S. D.
June 18, 1962.

Thomas M. Kavanagh, Lansing, Mich., in pro. per.

Eugene F. Black, Port Huron, Mich., in pro. per.

Paul L. Adams, Atty. Gen., Frank J. Kelley, Atty. Gen., succeeding Paul L. Adams, Lansing, James R. Ramsey, Asst. Atty. Gen., Lansing, for defendants.

Before CECIL, Circuit Judge, and THORNTON and KAESS, District Judges.

THORNTON, District Judge.

A statutory three-judge court was convened pursuant to 28 U.S.C.A. § 2281. Jurisdiction is alleged to exist under 28 U.S.C.A. § 1331(a) [1]. Plaintiffs are two of the eight Supreme Court justices of the State of Michigan. They assert rights which they claim are protected by the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. The three defendants are office holders (at the time of the commencement of this action) of the State of Michigan in the respective capacities set forth in the title of this action. They filed a motion to dismiss the action and also a motion to strike certain paragraphs of the complaint. This latter motion was heard by the Court and denied. Two weeks thereafter their motion to dismiss the action was heard simultaneously with the hearing on the merits. At said hearing plaintiffs moved to withdraw from their prayer for relief paragraphs 4 and 5, the gist of these being a request for a mandatory injunction ordering the defendant fiscal officers of Michigan to make salary payments according to certain set standards. The motion to withdraw paragraphs 4 and 5 was granted.

The motion to dismiss is based on an alleged lack of jurisdiction. In sup-

[1] "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."

port of this, defendants set forth five grounds in their motion as follows:

"1. The District Court of the United States for the Eastern District of Michigan has no jurisdiction, as the complaint does not set forth a cause of action arising under the Constitution, laws or treaties of the United States as is requisite to jurisdiction under United States Code, Title 28, section 1331.

"2. The District Court of the United States for the Eastern District of Michigan has no jurisdiction or judicial power to entertain the action sought to be enforced by the complaint, because it is in essence a suit against the State of Michigan.

"3. The District Court of the United States for the Eastern District of Michigan has no power to issue the coercive writs of mandamus or mandatory injunction sought by the complaint filed herein.

"4. The District Court of the United States for the Eastern District of Michigan has no jurisdiction of the action sought to be enforced by the complaint, as the jurisdictional amount required under United States Code, Title 28, section 1331, is obtained by aggregating two claims not subject to aggregation.

"5. The District Court for the United States for the Eastern District of Michigan has no jurisdiction of the action sought to be enforced by the complaint as amended, since the matter now in controversy does not equal or exceed the jurisdictional amount of $10,000.00 required under United States Code, Title 28, Section 1331."

As to the first ground, it is difficult to comprehend what defendants have in mind in view of the fact that the complaint is bottomed squarely on an alleged violation of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. As to the second ground, if it were sound, it would have the effect of rendering ineffective 28 U.S.C.A. § 2281. That section provides for exactly such a procedure as we have here, under the same circumstances as are here present. The third ground is, we believe, moot because of plaintiffs' withdrawal of paragraphs 4 and 5 from their prayer for relief. The fourth and fifth grounds are obviously without merit, as the jurisdictional amount is clearly present as to each plaintiff. This is a matter of simple arithmetic. If there still be any doubt as to the jurisdiction of the Court to determine this case on the merits, such doubt must be completely resolved in favor of the existence of jurisdiction in the light of the opinion of the United States Supreme Court delivered March 26, 1962 in the case of Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663. This Court has jurisdiction to determine the instant controversy.

The prayer for relief, as it remains after the withdrawal of paragraphs 4 and 5, reads as follows:

"Plaintiffs deem themselves entitled to adjudicatory process and relief as follows:

"1. To a permanent injunction restraining the operation and execution of said Act 163 save only on a basis of strict equality of payment of salary to each and all of the member justices of the Michigan Supreme Court.

"2. To a judicial determination that the quoted provision of Article 16 of the Constitution of Michigan, and quoted section 2 of said Act 163, offend plaintiffs' right to equal protection of the laws and that both, as applied to plaintiffs, are invalid.

"3. To a judicial determination that section 2 of said Act 163 is severable from the remainder of the act and, when so severed, that the remainder of the act is valid and fully effective as of its legal date (August 17, 1960).

"6. To a declaratory decree determining that the uniformly sworn

status and the uniform duties of all members of the Michigan Supreme Court is such as to require equal compensation to each at all times.

"7. To convocation, pursuant to section 2284 of Title 28, United States Code, of a three judge court; such court to hear and determine the issues presented by this complaint.

"8. To such other and further relief as may be agreeable to equity and good conscience."

The provision of Article 16 of the Constitution of Michigan which plaintiffs claim to be violative of the Equal Protection Clause is Section 3, and reads as follows:

"Neither the legislature nor any municipal authority shall grant or authorize extra compensation to any public officer, agent, employe or contractor after the service has been rendered or the contract entered into. Salaries of public officers, except circuit judges, shall not be increased, nor shall the salary of any public officer be decreased, after election or appointment."

■ The legislature of the State of Michigan by Act No. 163 of the Michigan Public Acts of 1960 effected a salary increase for justices of the Michigan Supreme Court. The Act provides that "Each justice of the supreme court shall receive an annual salary of $25,500.00, payable out of the moneys appropriated by the legislature", and also includes a proviso consistent with the Article 16 provision of the State Constitution. This proviso reads as follows: "Justices of the supreme court in office on the effective date of this amendatory act shall not receive any increase in annual salary until the expiration of their respective terms of office." We view the proviso as neither adding to nor subtracting from the prohibition contained in Article 16. If Article 16, § 3, is valid, then the proviso is valid; if not, the proviso falls. It has no independent status. The plaintiff justices are required to continue re-

ceiving their present salary of $18,500.00 for their respective terms of office. They will, however, be eligible to receive the higher salary of $25,500.00 upon the commencement of new terms of office. Justice Black's present term ends December 31, 1963, and that of Justice Kavanagh, December 31, 1965. It is the contention of plaintiff justices, that because certain members of the court entered the service of the Supreme Court subsequent to the effective date of Act No. 163 and as a result are receiving the increased salary, that the differential in salaries among the eight justices constitutes a discrimination which is repugnant to the Equal Protection Clause so as to render the offending Article 16, § 3, of the Michigan Constitution invalid. We are requested to so declare.

Our approach to this problem need not be complex nor many-faceted. There are no disputed factual issues, and the factual picture is simple. There are eight justices serving on the Supreme Court of the State of Michigan. They do not all receive the same or equal compensation. They are all required to render the same or equal services. Some of those who have served longer than others receive less compensation. They are therefore receiving unequal treatment. This is the result of three factors * * * Article 16, § 3, of the State Constitution, Act No. 163 of the Michigan Public Acts of 1960, and the commencement of new terms of office for certain justices subsequent to the effective date of Act No. 163. Plaintiffs have no quarrel with the second and third factors. Act No. 163 provides for an increase in salary. Plaintiffs do not object to this. The fact of the embarkation upon new terms of office for some of the justices is not objected to by plaintiffs. It is the first factor to which plaintiffs voice vigorous objection * * * Article 16, § 3. This is the stumbling block to their getting the benefit of the salary increase during their existing terms of office. This provision they contend denies them the equal protection of the laws as it is guaranteed to them by the

Fourteenth Amendment. This contention is not a novel one. The Supreme Court of the United States has been called upon to determine, and has determined again and again, whether various types of state legislation [2] which work a discrimination are offensive to the constitutional safeguard. A recent such case is that of McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). The question there present concerned the validity of Maryland's Sunday Closing Laws. The language of the Supreme Court contained in Part I of its opinion is equally pertinent here, as is also that contained in several of the cases cited therein by the Court. We proceed here to set forth quotations from opinions of the United States Supreme Court which must be our touchstone for making the present determination:

McGOWAN v. MARYLAND, 366 U.S. 420, 425–426, 81 S.Ct. 1101, 1104, 1105 (1961)—"Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it."

WILLIAMSON v. LEE OPTICAL CO., 348 U.S. 483, 488–489, 75 S.Ct. 461, 464, 465, 99 L.Ed. 563 (1955)—

"Secondly, the District Court held that it violated the Equal Protection Clause of the Fourteenth Amendment to subject opticians to this regulatory system and to exempt, as § 3 of the Act does, all sellers of ready-to-wear glasses. The problem of legislative classification is a perennial one, admitting of no doctrinaire definition. Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. * * * Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. * * * The legislature may select one phase of one field and apply a remedy there, neglecting the others. * * * The prohibition of the Equal Protection Clause goes no further than the invidious discrimination. We cannot say that that point has been reached here. For all this record shows, the ready-to-wear branch of this business may not loom large in Oklahoma or may present problems of regulation distinct from the other branch."

KOTCH v. PILOT COMMISSIONERS, 330 U.S. 552, 556, 67 S.Ct. 910, 912, 91 L.Ed. 1093 (1947)—

"The constitutional command for a state to afford 'equal protection of the laws' sets a goal not attainable by the invention and application of a precise formula. This Court has never attempted that impossible task. A law which affects the activities of some groups differently from the way in which it affects the activities of other groups is not necessarily banned by the Fourteenth Amendment. * * * Otherwise, effective regulation in the public interest could not be provided, however essential that regulation might be. * * * This selective application of a regulation is discrimination in the broad sense, but it may or may not deny equal protection of the laws. Clearly, it might offend that constitutional safeguard if it rested on grounds wholly irrelevant to achievement of the regulation's objectives. An example would be a law applied to deny

2. Constitutional provisions are embraced in the words "State statute" as used in § 2281. American Federation of Labor v. Watson, 327 U.S. 582, 592–593, 66 S.Ct. 761, 90 L.Ed. 873 (1946); Alabama Public Service Commission v. Southern Ry. Co., 341 U.S. 341, 343–344, footnote 3, 71 S.Ct. 762, 95 L.Ed. 1002 (1951); Wilson v. Beebe, D.C., 99 F.Supp. 418, 421 (1951).

a person a right to earn a living or hold any job because of hostility to his particular race, religion, beliefs, or because of any other reason having no rational relation to the regulated activities."

METROPOLITAN CASUALTY INS. CO. v. BROWNELL, 294 U.S. 580, 582–583, 55 S.Ct. 538, 539, 79 L.Ed. 1070 (1935)—

"We may assume that the petitioner, by entering the State of Indiana and carrying on busines there, is not barred from asserting that its legislation conflicts with the Federal Constitution, * * * and we pass directly to the single question presented, whether the prohibition applied here to a foreign casualty insurance company infringes the Fourteenth Amendment because it is not likewise applied to domestic companies. Petitioner does not assail the prohibition as not within the scope of the legislative power or as itself so arbitrary or unreasonable as to be a denial of due process. It is not argued, nor could it be on the record before us, that the restriction would be unconstitutional if applied equally to both classes of corporations. Discrimination alone is the target of the attack.

"The equal protection clause does not prohibit legislative classification and the imposition of statutory restraints on one class which are not imposed on another. But this Court has said that not every legislative discrimination between foreign and domestic corporations is permissible merely because they differ, and that with respect to some subjects of legislation the differences between them may afford no reasonable basis for the imposition of a statutory restriction upon foreign corporations, not applied to domestic corporations. The ultimate test of validity is not whether foreign corporations differ from domestic, but whether the differences between them are pertinent to the subject with respect to which the classification is made. * * * If those differences have any rational relationship to the legislative

command, the discrimination is not forbidden."

It seems clear from the above that the alleged discrimination must be tested by its relationship to the achievement of the objectives of Article 16, § 3, of the State Constitution. The Michigan Supreme Court has spoken clearly and unequivocally in the case of Vigelius v. Houghton County Clerk, 317 Mich. 138, 26 N.W.2d 737, decided in 1947. The following quotation from Barrus v. Engel, 186 Mich. 540, 544, 545, 152 N.W. 950, appears in Vigelius, 317 Mich. at pages 143–144, 26 N.W.2d at page 739, and we quote it as set forth there:

" 'No direct authority upon the exact question presented here is to be found in our decisions. The wisdom of a provision prohibiting any change either by increase or reduction of a public officer's salary during his term has been universally recognized. Such provisions are common in Constitutions and statutes of the various states, and the courts have been firm in restraining attempts to evade them. This court has been in line with the general rule when deciding cases where phases of the question have arisen. (People ex rel.) Douvielle, v. [Manistee County] Supervisors, 40 Mich. 585; Anderson v. Hill, 54 Mich. 477, 20 N.W. 549; Olds v. State Land, [Office] Comm'r, 134 Mich. 442, 86 N.W. 956, 96 N.W. 508; Chase v. Hart, 162 Mich. 74, 127 N.W. 256. * * *

" 'We find here not only the constitutional prohibition, but that in the amendment itself which created this office those empowered to determine the matter of compensation exercised that authority, and declared in express language that no salary or other compensation should attach to the office, and also that the "Home-Rule Law" which authorized the amendment again declares that a city has no power to change the sal-

ary or emoluments of a public official after his appointment or election.

" 'Restrictive provisions of this class are universally recognized as in the interest of good government and founded on sound reasons of public policy. They are adopted for the two-fold purpose of protecting the public by restraining those in office from taking advantage of their positions and official influence to unduly secure added compensation not contemplated and to which they were not entitled when they were selected for and accepted office, and also to secure each individual officer in enjoyment of the emoluments provided and rightfully to be expected when he accepted his office, by protecting him from any unfriendly power which might, for any reason, otherwise reduce or abolish them.' "

An expression from the highest court of a sister state to the same effect is to be found in the case of State ex rel. Mack, Judge v. Guckenberger, Aud., 139 Ohio St. 273, 278, 39 N.E.2d 840, 139 A. L.R. 728 (1942) where the Court spoke as follows:

"The purpose of the constitutional inhibition now under consideration is to make sure that the judge and the electorate are advised before he is appointed or elected what his compensation will be, with the assurance that it cannot be changed by the Legislature during the term; that the judge is precluded from using his personal influence or official action to have the Legislature increase his salary; and that at the same time he is protected against the Legislature and the people from decreasing his compensation after his term begins. These same salutary purposes are fully and effectually preserved by the terms of the present statute, albeit the compensation of the judge is made variable, from and after the last federal census becoming effective during his term."

Need we expound further? Our view as to the wisdom of the provision is of no account. Our view as to its fairness as applied in the instant case is of no account. Our function is to apply the law as laid down by the United States Supreme Court. We are convinced that according to its precepts we may not here declare Article 16, § 3, to be violative of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. "It is a salutary principle of judicial decision, long emphasized and followed by this Court, that the burden of establishing the unconstitutionality of a statute rests on him who assails it, and that courts may not declare a legislative discrimination invalid unless, viewed in the light of facts made known or generally assumed, it is of such a character as to preclude the assumption that the classification rests upon some rational basis within the knowledge and experience of the legislators. A statutory discrimination will not be set aside as the denial of equal protection of the laws if any state of facts reasonably may be conceived to justify it." Metropolitan Co. v. Brownell, 294 U.S. 580, 584, 55 S.Ct. 538, 540 (1935). We are not convinced that an apparently reasonable basis for the alleged discrimination does not exist, or that the statutory (constitutional) discrimination is invidious. We are unable to say that this provision does not provide equal protection of the laws.

An appropriate decree may be presented.