Honorable Judge S. J. BUCKALEW;
Honorable Judge Ralph E. Moody;
and State of Alaska, Appellants,

v.

James HOLLOWAY, Appellee.

No. 4058.

Supreme Court of Alaska.

Dec. 14, 1979.

Shelley J. Higgins, Asst. Atty. Gen., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellant.

James T. Brennan, John S. Hedland, Rice, Hoppner, Hedland, Fleischer & Ingraham, Anchorage, for appellee.

Robert L. Eastaugh, Delaney, Wiles, Moore, Hayes & Reitman, Inc., Anchorage, amici curiae.

## OPINION

Before RABINOWITZ, C. J., BOOCHEVER, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

MATTHEWS, Justice.

On August 22, 1977, James Holloway was terminated from his position as Dillingham magistrate, by order of Judge Buckalew, then acting as presiding superior court judge of the third judicial district. The termination order was subsequently approved by the presiding superior court judge, Judge Moody, pursuant to AS 22.15.170(c), which provides in pertinent part: "Each magistrate serves at the pleasure of the presiding judge of the superior court in the judicial district for which appointed."

By way of summary judgment, Holloway prevailed below on his claim that AS 22.15.170(c) violates article IV, section 4 of the Alaska Constitution, which provides:

*Qualification of Justices and Judges.* Supreme court justices and superior court judges shall be citizens of the United States and of the State, licensed to practice law in the State, and possessing any additional qualifications prescribed by law. Judges of other courts shall be selected in a manner, for terms, and with qualifications prescribed by law.

The trial court found that magistrates are "judges of other courts" within the meaning of article IV, section 4, and that service at the pleasure of the presiding judge falls short of that section's requirement that judges be "selected . . . for terms prescribed by law."[1] We reverse, based on our contrary interpretation of that latter requirement.

The state conceded at the trial level that magistrates are "judges," but now wishes to retract that concession. We find it unnecessary to address the retraction issue. The argument that magistrates are not article IV "judges" rests primarily on the assertion that territorial commissioners were the predecessors of Alaska magistrates, and that the framers of the Alaska Constitution must have been aware that United States commissioners had been

1. All other questions, such as whether Holloway's summary dismissal comports with due process, were expressly held in abeyance by the parties at the trial level, and we intimate no view on the merits of claims not yet litigated.

found not to be "judges" by the United States Supreme Court.[2] This argument has many weaknesses,[3] chief among them being the fact that the territorial commissioners were predecessors of present-day Alaska district court judges as well as magistrates,[4] and it is incontestable that article IV, section 4 was intended to confer the appellation "judge" on the former. Thus the state's historical proofs tend more to demonstrate the framers' rejection, rather than adoption, of the circumscribed definition of "judge" found in earlier cases.

2. *Todd v. United States*, 158 U.S. 278, 282, 15 S.Ct. 889, 890, 39 L.Ed. 982, 983 (1895); *United States v. Allred*, 155 U.S. 591, 595, 15 S.Ct. 231, 233, 39 L.Ed. 273, 274 (1895). *See Grin v. Shine*, 187 U.S. 181, 187, 23 S.Ct. 98, 101, 47 L.Ed. 130, 135 (1902).

3. The "commissioners" found by the Supreme Court not to be "judges," unlike present-day Alaska magistrates, never had authority to try civil cases, *see Allred*, 155 U.S. at 595, 15 S.Ct. at 233, 39 L.Ed. at 274, and were not given even "petty crimes" jurisdiction until 1940. 54 Stat. 1058 (current version at 18 U.S.C. § 3401). *Special* commissioners authorized by Congress to serve in the territory of Alaska were empowered to try cases in 1884. 23 Stat. 24. *See also* 30 Stat. 1253 (1889); Carter Code ch. 42 § 410, ch. 70 § 702 (1900). While territorial courts were declared to be nonarticle III courts in *American Insurance Co. v. 356 Bales of Cotton*, 26 U.S. (1 Pet.) 511, 7 L.Ed. 242 (1828), it was not on the ground that their judges were not judges. *See* Note, *Masters and Magistrates in the Federal Courts*, 88 Harv.L.Rev. 779, 782–84 (1975). The only case deeming territorial commissioners not to be judges relied on the wholly inapposite Supreme Court decisions in *Todd* and *Allred*. *Ex Parte Nelson*, 8 Alaska Reports 8, 11 (1924).

4. Alaska commissioners presided over the "justice court," the primary territorial trial court of limited jurisdiction. The jurisdiction of the justice court, and its relation to the federal district court serving Alaska, respectively, were nearly identical to the jurisdiction now residing in the state district court, and the relation of the latter to the state superior court. *Compare* A.C.L.A.1949 §§ 68–2–1, 69–2–1, 53–2–1, and 66–3–1, *with* AS 22.15.030–.060 and AS 22.10.020(a) (1979).

5. *See, e. g.,* the statement of Delegate McLaughlin:

There is competent authority in here for the legislature to create any type of court imaginable except that the highest court of appeal

As for the various pronouncements of the convention delegates[5] and the first state legislature[6] that have been cited, we discern in them only the recognition that article IV, section 4 intended to leave the legislature considerable flexibility in the creation of new courts. It is hardly inconsistent with that theme of flexibility for article IV to designate as "judges" those who wield the authority vested in such new courts. Finally, the state has been able to point to no modern authorities supporting the distinction it wishes to draw between judge and magistrate.[7]

and the court with the rule-making power and the administrative power is the supreme court. We can establish probate courts, magistrate courts, if they so desire, justice of the peace courts, domestic relations courts, courts of special sessions, courts of any conceivable nature.  .  .  .

1 Minutes of the Constitutional Convention 733–34.

6. In creating the district court, then called the district magistrate court, the legislature declared:

It is the intent of the Legislature by the passage of this Act [this chapter] to implement the organization of the state courts provided for in the Constitution of the State of Alaska by establishing subordinate courts as an integral part of a unified judicial system. To this end, the district magistrate courts as herein established shall constitute the sole and exclusive subordinate court system of the state  .  .  . with each such district magistrate court having as court officers district magistrates with general trial power within the limits of the court's jurisdiction and deputy magistrates of limited trial power sufficient to meet the immediate requirements of justice in the less populated areas of the state. (Bracketed portion in original text).

A.C.L.A. § 52A–2–42 (Supp.1959). The district magistrates and deputy magistrates were renamed district judges and magistrates, respectively, by § 3 ch. 24 SLA 1966.

7. Federal magistrates are not "judges" under federal law, since art. III, § 1 of the U.S.Const. requires that all federal "judges" be tenured for life, and magistrates are not. 28 U.S.C. § 631(e). However, a federal magistrate may enter judgment only in certain misdemeanor cases, and then only upon the written waiver by the defendant of his or her right to be tried by a federal district judge. 18 U.S.C. § 3401. This is substantially less than the civil and non-waiver criminal jurisdiction conferred on

■ A magistrate is a judicial officer [8] of the district court. AS 22.15.020(b). Like a district court judge, a magistrate may issue writs of habeas corpus, issue search and arrest warrants, and conduct preliminary examinations in any criminal proceeding. AS 22.15.100(1, 4, and 5). In addition a magistrate may hear, try and enter judgment in a small claims action, AS 22.15.040, and in any case in which recovery of money damages, personal property, penalty, or forfeiture is sought, when the amount in controversy is less than $1,000; may enter judgment upon a plea of guilty in any criminal case in which the district court has jurisdiction; may "hear, try, and enter judgments in all cases involving misdemeanors, if the defendant consents in writing that the magistrate may try him;" and may "hear, try and enter judgments in all cases involving infractions under AS 28 [9] and violations of ordinances of political subdivisions." AS 22.15.120(1, 2, 3, 5, 6, and 7).

Just as with a judgment entered by a district court judge, appeal from a magistrate's entry of judgment is to the superior court. AS 22.15.240. Thus a magistrate is not merely "an assistant" to a district court judge, as suggested by the state, but presides with full authority over a court of limited jurisdiction, exercising the judicial power vested by article IV, section 1 of the Alaska Constitution.[10] Such a person is a "judge" within the meaning of article IV, section 4.

■ Finding magistrates to be "judges", we must next consider whether requiring a magistrate to serve "at the pleasure of the presiding judge of the superior court" violates article IV, section 4's mandate that "judges of other courts *shall be selected* in a manner, *for terms*, and with qualifications *prescribed by law*" (emphasis added).[11] As the word "term" has been interpreted by courts in a variety of contexts,[12] and as it is used elsewhere in the

---

Alaska magistrates. AS 22.15.040; 22.15.-120(1, 2, 3 and 7). Moreover, the federal courts have not yet determined whether 18 U.S.C. § 3401 constitutes a delegation of adjudicatory power to a non life-tenured official in violation of the Federal Constitution. *See* I. Hall and M. Waxner, 8B Moore's Federal Practice, Appendix § 0.02[2] (2d ed. 1978). The primary argument in support of constitutionality rests on the defendant's consensual waiver and not on the assertion that the magistrate is not acting as a judge. *See, e. g.,* W. Bloch, *An Adjudicative Role for Federal Magistrates in Civil Cases*, 40 U.Chi.L.Rev. 584, 595 (1973). Other powers delegated to federal magistrates have been upheld only insofar as they do not permit magistrates to render ultimate decisions on potentially dispositive questions of law. *See, e. g., Mathews v. Weber*, 423 U.S. 261, 270–71, 96 S.Ct. 549, 554, 46 L.Ed.2d 483, 491–92 (1976); *United States v. Wisnowski*, 580 F.2d 149, 150 (5th Cir. 1978); *United States v. First National Bank of Rush Springs*, 576 F.2d 852, 853 (10th Cir. 1978); *Taylor v. Oxford*, 575 F.2d 152, 154 (7th Cir. 1978). *See generally, Masters and Magistrates, supra* note 3 at 782–97.

8. AS 22.20.010 provides:
   The term "judicial officer" means a supreme court justice, including the chief justice, a judge of the superior court, a district judge and a magistrate.

9. Title 28 concerns minor offenses relating to the use of motor vehicles.

10. Art. IV, § 1 provides in part:
    The judicial power of the State is vested in a supreme court, a superior court, and the courts established by the legislature. The jurisdiction of courts shall be prescribed by law.

11. In the trial court the state conceded that a "term" connotes a fixed period of time, and argued the validity of AS 22.15.170(c) under a somewhat different theory than that presented on appeal. Thus, Holloway urges this court to find the critical issue of this lawsuit waived, and to order his reinstatement as Dillingham magistrate. Given that Holloway's dismissal and reinstatement are matters of public rather than private interest, and that his views have been fully aired in and considered by both this court and the trial court, we decline to be bound by the form of the state's argument below. *See, e. g., Marks v. State*, 496 P.2d 66, 67 (Alaska 1972).

12. Despite the willingness of courts to define "term" as referring to a "fixed" period however, when specific holdings are scrutinized, few provide actual support for the proposition that "service at the pleasure of" is not a "term." *See, e. g., Delahay v. State*, 476 P.2d 908, 911 (Alaska 1970), *cert. denied*, 402 U.S. 901, 91 S.Ct. 1381, 28 L.Ed.2d 642 (1971); *Collision v. State ex rel. Green*, 9 W.W.Harr. 460, 2 A.2d 97, 100 (Del.1938); *Sueppel v. City Council of Iowa City*, 257 Iowa 1350, 136 N.W.2d 523, 525 (1965); *State ex rel. Anderson v. Fousek*, 91 Mont. 448, 8 P.2d 791, 793 (Mont.1932).

Alaska Constitution,[13] it refers to a period of service that is fixed in time. As it is used in article IV, section 4, however, we do not believe it was intended to imply such a precise limitation.[14] A broader definition of the word, "the time for which something lasts," Webster's Third New International Dictionary, is in closer accord with the apparent purposes of article IV, section 4.

■ The provisions of article IV that set forth specific selection procedures, terms, and qualifications,[15] refer to the justices and judges of the supreme and superior courts, the only courts created by the constitution. Section 1 leaves the creation of all other courts to the legislature; section 4 directs the legislature to provide for the selection, terms, and qualifications of the judges of the courts it creates. The directive is unqualified and would appear to vest absolute discretion in the legislature. For example, despite the extensive deliberation engaged in by the delegates regarding the selection procedure that would best avoid involving judges in politics,[16] section 4 does not impose on the legislature the duty to mirror the procedures chosen by the framers. Similarly "qualifications": though the first sentence of section 4 requires only that supreme and superior court justices and judges be citizens and be admitted to the bar, the second sentence does not require the legislature to adopt even

these minimal qualifications for the judges of the courts it creates. It would thus be an incongruous construction if the remaining directive, relating to the "terms" of "judges of other courts," was meant to be a precise commandment, rather than merely point to an area in which the legislature has the power to act.

Article IV, section 6 specifies the "terms" of the justices and judges of the supreme and superior courts:

> Each supreme court justice and superior court judge shall, in the manner provided by law, be subject to approval or rejection on a nonpartisan ballot at the first general election held more than three years after his appointment. Thereafter, each supreme court justice shall be subject to approval or rejection in a like manner every tenth year, and each superior court judge, every sixth year.

The "terms" thus delineated constituted a rejection of the federal judicial system, in which federal judges serve no "term", but remain in office for life unless impeached.[17] The framers of the Alaska Constitution expressly sought a system in which justices and judges would be accountable for their performance in office.[18]

■ Providing that magistrates serve "at the pleasure of the presiding judge of the superior court" is clearly designed to

---

**13.** As originally adopted, the constitution used "term" to describe the definite periods of service of the governor and secretary of state, art. III, §§ 4 and 7, legislators, art. II, § 3, and members of the judicial council, art. IV, § 8, and used "term" generally to describe the period in office of all justices and judges, art. IV, § 13. Article IV, § 2(b) (adopted in 1970) refers to the three year "term of office" of the chief justice. In referring to persons appointed to serve at the pleasure of the governor, art. III, § 25, and chief justice, art. IV, § 16, the word "term" is not used.

**14.** With the exception of art. IV, wherever "term" or "service at the pleasure of" appears in the constitutional text originally adopted, supra note 13, the reference is to a period of service for a particular office, thus allowing the drafters to be precise, in their terminology. The language of art. IV, §§ 4 and 13, on the other hand, applies to any judge of any court the legislature might create, and "term" in that

context may intend only the more general, though equally valid connotation of any limitation on a period of service. Cf. Webster's Third New International Dictionary (1971) ("a limited or definite extent of time"); Black's Law Dictionary (4th ed. 1968) ("the period during which elected officer or appointee is entitled to hold office").

**15.** Article IV, §§ 4, 5, and 6.

**16.** See, e. g., 1 Proceedings of the Constitutional Convention 584–614.

**17.** Article III; § 1 of the U.S.Const. provides in pertinent part: "The judges, both of the Supreme and inferior courts, shall hold their offices during good behavior . . . ."

**18.** See 1 Proceedings of the Constitutional Convention 586, 598–99.

achieve an ongoing guarantee of accountability. The legislature's intent in creating the office of magistrate was "to meet the immediate requirements of justice in the less populated areas of the state." [19] Given Alaska's area, that task is not an easy one. Pursuant to the enabling provision of AS 22.15.020(c), Administrative Rule 31 [20] authorizes the appointment of sixty-four magistrates, nearly half again as many as the total number of supreme, superior and district court justices and judges serving the state.[21] In order to fill these positions no degree of education or legal training is required of applicants.[22] Magistrates normally serve in communities in which no superior or district court judges sit permanently,[23] making day to day supervision impossible. It is apparent that the broad power vested in the presiding superior court judge to dismiss magistrates is intended to provide an unencumbered means of quickly remedying any situation in which judicial unfitness is impairing the administration of justice in rural Alaska. With respect then to the accountability demanded in the requirement that the legislature designate the "terms" of judges, service "at the pleasure of" constitutes a "term." [24]

Appellee Holloway argues that though service "at the pleasure of" the superior court may satisfy the framers' concern for judicial competence, the provision does violence to the framers' objective of establishing an independent judiciary. There is no doubt that judicial independence was a paramount concern of the delegates; [25] nor can there be any doubt that a judge who serves at another's pleasure does not enjoy complete independence. Nonetheless, we cannot conclude that the authority given the presiding judge of the superior court violates the framers' intent.

First, article IV does not indicate that in creating new courts, the legislature is bound by the framers' concept of independence for supreme and superior court justices and judges. Though the constitutional design for the selection and retention of the latter officials embodies the core of the framers' statement regarding independence,[26] article IV, section 4 would seem to empower the legislature to embrace precisely the procedures rejected by the framers, e. g., selection of judges by partisan election, or by the governor. It is thus impossible to extract from article IV a firm concept of judicial independence applicable to legislatively created courts.

Second, the independence of which the delegates spoke was independence from political pressures. The objective was an impartial judiciary. The framers rejected a system in which judges competitively campaign for election, fearing that financial and psychological debts would be incurred in the process,[27] and that pre-election decisions in controversial cases would be molded

---

**19.** § 25 ch. 184 SLA 1959, A.C.L.A. § 52A–2–42 (1959 Supp.).

**20.** Rules Governing the Administration of All Courts.

**21.** The number of supreme, superior, and district court justices and judges are set by AS 22.05.020, 22.10.120, and Administrative Rule 31, respectively.

**22.** AS 22.15.160(b) provides:
   A magistrate shall be a citizen of the United States and of the state, at least 21 years of age, and a resident of the state for at least six months immediately preceding his appointment. The supreme court may prescribe additional qualifications.
This court has prescribed no additional qualifications. Administrative Rule 36.

**23.** *See* Administrative Rules 32–34.

**24.** We reject the appellee's suggestion that since "service at the pleasure of" the superior court does not *require* a periodic accounting, it may result in a lifetime appointment without review of a magistrate's performance. The possibility that the presiding superior court judge will simply ignore the supervisory duty implicitly imposed by AS 22.15.170(c) is too remote to invalidate the scheme *per se.* Moreover, this court, given its rule-making powers under art. IV, § 15, may mandate periodic performance evaluations, if such become necessary to give effect to the statute.

**25.** *See* 1 Proceedings of the Constitutional Convention 586–602.

**26.** *Id.* at 601–02.

**27.** *Id.* at 584–85, 601–02.

more by public mood than the dictates of law;[28] they likewise rejected a simple gubernatorial appointment system, fearing executive dominance over the judiciary.[29] Magistrates are not subject to any of these specific pressures: they do not campaign, are never accountable to the voting public, and are not appointed by the governor.[30]

For a magistrate to serve "at the pleasure of" the presiding superior court judge does not impair the independence of the magistrate to adjudicate cases impartially. The influence of the presiding judge simply cannot be equated with the undue influence potential in voter outrage or executive patronage. The latter may affect the outcome of particular cases in contravention of the dictates of the law, merely as a result of psychological pressure; the pressure that inheres in serving at the pleasure of the presiding judge, by promoting competency, tends to ensure precisely the opposite result, namely, that adjudication will be in conformity with the law.

We recognize of course that a position of authority may be abused; however, the mere potential for abuse does not in this case render the statutory mechanism *per se* unconstitutional. Magistrates dismissed pursuant to AS 22.15.170(c) are not necessarily without legal recourse. Abuses in particular cases may still be subject to the dictates of other constitutional commands, such as due process, and in this case to the rulemaking and supervisory powers of this court.[31] We presume that these issues will be explored at trial.

**28.** *Id.* at 586, 598.

**29.** *Id.* at 598.

**30.** Magistrates are appointed by the presiding superior court judge. AS 22.15.170(c). We note that the territorial commissioners who exercised the powers of the offices now held by district judges and magistrates, at the time of the constitutional convention also served at the "pleasure" of their superior judicial officers. A.C.L.A. 1949 § 54–4–1.

**31.** The chairperson of the committee that drafted the judiciary article, assured the convention delegates that any abuses that might result

■ Holloway's final contention is that article IV, section 10[32] is applicable to magistrates and establishes the only means by which a magistrate may be removed from office. Assuming, without holding, that the section 10 procedures are applicable to magistrates,[33] we do not share the appellee's conclusion. At the very least, the removal provisions of article IV are supplementary to the removal procedure that defines the end of a judge's term. If such were not the case, sections 10 and 6 of article IV would be in direct conflict, since the retention elections for which supreme court justices and superior court judges must stand are most definitely a means of removing the latter from office. Thus even if section 10 is applicable to magistrates, it does not restrict the legislature's authority under section 4 to the prescribe that magistrates shall serve at the pleasure of the presiding judge.

The judgment of the superior court is REVERSED.

BOOCHEVER, Justice, with whom RABINOWITZ, Chief Justice, joins, dissenting in part.

I do not agree with the portion of the opinion that holds that the requirement of art. IV, § 4, of Alaska's Constitution specifying that: "[j]udges of other courts shall be selected . . . for terms . . . prescribed by law" is satisfied by the provisions of AS 22.15.170(c). That section specifies that:

> The presiding judge of the superior court in each judicial district shall appoint the magistrates for the district court for the

from the "great flexibility" conferred by art. IV, § 4 on the legislature, would be subject to remedial action by this court under the administrative rulemaking power delegated to it by art. IV, § 15. 1 Proceedings of the Constitutional Convention 733.

**32.** Adopted in 1968, art. IV, § 10 created a commission on judicial qualifications which could recommend to the supreme court that a justice or judge be suspended, removed from office, retired or censured.

**33.** A contention disputed by the state.

judicial district. Each magistrate serves at the pleasure of the presiding judge of the superior court in the judicial district for which appointed.

Specifying service "at the pleasure" of an authority seems to me to be the very antithesis of designating a "term." There might be some argument if a term were prescribed—for one, two or more years—and removal specified at the pleasure of the presiding judge. But here no term has been prescribed so we need not reach that issue.[1]

The word "term" connotes a fixed period of time, and the use of the adjective "fixed" in connection with the noun "term" would be a redundancy. The framers of our Constitution sought to avoid redundancy.[2]

The majority admits that the word "term" as interpreted by courts in a variety of contexts refers to a period of service that is fixed in time. Among cases so holding are *Bayley v. Garrison*, 190 Cal. 690, 214 P. 871, 872 (1923); *Kratzer v. Commonwealth*, 228 Ky. 684, 15 S.W.2d 473, 474–75 (1929); *Board of Education of Pendleton County v. Gulick*, 398 S.W.2d 483, 485 (Ky.App.1966); *State ex rel. Gilbert v. Board of Commissioners of Sierra County*, 29 N.M. 209, 222 P. 654, 655 (1924); *State ex rel. Matlack v. Oklahoma City*, 38 Okl. 349, 134 P. 58, 59 (1913) (all cases construing "term" in a constitution). *See also Sueppel v. City Council of Iowa City*, 257 Iowa 1350, 136 N.W.2d 523, 527 (1965); *Ida County Sav. Bank v. Seidensticker*, 92 N.W. 862, 866 (Iowa 1902) (defining "term" in other contexts). In fact, it has been stated that "an officer removable at the pleasure of the appointing officer has, in the strict meaning of the word, no 'term' of office." *State ex rel. Bonner v. District Court*, 122 Mont. 464, 206 P.2d 166 (Mont.1949), *quoting*, 46 C.J.S. *Officers* § 98.

The distinction between a requirement of specifying a "term" of office and a general authorization to the legislature is discussed in *Collision v. State ex rel. Green*, 2 A.2d 97 (Del.1938), wherein it was held that a provision authorizing the governor to remove members of the State Industrial Accident Board "with or without cause" was upheld because of the absence of a constitutional requirement that a "term" be prescribed for the office. The court stated:

> As there is nothing in the Delaware Constitution which requires the legislature in the creation of statutory offices to prescribe fixed and definite terms for their occupancy, it must necessarily follow that no constitutional inhibition exists against the creation of such an office to be held during the pleasure of the appointing power.[3]

In contrast, Alaska's Constitution does contain a provision requiring the legislature to prescribe "terms" of magistrates.

The majority further admits that as used elsewhere in Alaska's Constitution, the word "term" refers to a "period of service that is fixed in time."[4] I fail to see any reason to utilize a different, and what seems to me to be a most strained, interpretation of the word "term" when applied to magistrates.

I would affirm Judge Rowland's decision that service at the pleasure of the presiding judge falls short of the constitutional requirement that judges be selected for "terms prescribed by law."

---

1. *But see Collision v. State ex rel. Green*, 2 A.2d 97 (Del.1938), discussed *infra*.

2. *Thomas v. Bailey*, 595 P.2d 1, 6 (Alaska 1979).

3. *Id.* at 100. In our prior case concerning the office of a district judge, we did not have presented the issue of whether service "at pleasure" complied with the constitutional requirement of prescribing "terms" of office. *Delahay v. State*, 476 P.2d 908 (Alaska 1970).

4. *See* Note 13 of the majority opinion, for examples.