William HUDSON, Commissioner of
Administration and the State of
Alaska, Appellants,

v.

Karl JOHNSTONE and Richard
Avery, Appellees.

No. 5938.

Supreme Court of Alaska.

March 4, 1983.

David T. LeBlond, Asst. Atty. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellants.

Robert H. Wagstaff, D. John McKay, Wagstaff, Middleton & Pope, Anchorage, for appellees.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS, and COMPTON, JJ.

## OPINION

MATTHEWS, Justice.

This case involves a constitutional challenge to AS 22.25.011 requiring contribution by justices and judges to a retirement system. We find that the lower court erred in declaring the statute unconstitutional on equal protection grounds, and therefore reverse.

AS 22.25.011 states that "[e]ach justice and judge appointed after July 1, 1978, shall contribute seven per cent of the base annual salary received by the justice or judge to the judicial retirement system." [1] Justices and judges appointed prior to that date are not required to contribute, even though the criteria for eligibility (AS 22.25.-010) and the retirement pay (AS 22.25.020) are the same for both categories.

Superior court judge Karl Johnstone was appointed to the bench after July 1, 1978, and thus has seven per cent of his salary deducted as his contribution to the judicial retirement system. On August 7, 1980 he filed a complaint in superior court against William Hudson, the Commissioner of Administration, and the State of Alaska (hereinafter collectively referred to as "the state"). Judge Johnstone sought a declaratory judgment that AS 22.25.011 was unconstitutional and an injunction restraining the state from making further deductions under that statute.[2]

---

1. AS 22.25.011 has been amended since this case was argued by Ch. 137, § 30, SLA 1982. It now reads, with 1982 additions underlined and deletions in brackets:

    Each justice and judge appointed after July 1, 1978, shall contribute seven percent of *the* [HIS] base annual salary *received by the justice or judge* to the *judicial* retirement system. Contributions shall be made for all creditable service under this chapter to a maximum of 15 years. This contribution is made in the form of a deduction from compensation, and is made *even if* [NOTWITHSTANDING THAT] the compensation paid in cash to the justice or judge is reduced [THEREBY] below the minimum prescribed by law. Each justice and judge is considered to consent to the deduction [MADE] from [HIS] compensation. Payment of compensa-

    tion less the deduction constitutes a full [AND COMPLETE] discharge [AND ACQUITTANCE] of all claims and demands for the services rendered by *the justice or judge* [HIM] during the period covered by the payment, except as to the benefits provided for under *this chapter* [AS 22.25.010–22.25.090]. The contributions shall be credited *to the retirement fund established in accordance with AS 22.25.048* [INTO THE GENERAL FUND OF THE STATE].

    The 1982 changes have no bearing on the equal protection issue raised in this case.

2. The action was originally brought by Judge Johnstone and district court judge Richard Avery. Judge Avery has since resigned from the judiciary and is therefore no longer an active party in this case.

On March 5, 1981 the lower court entered summary judgment in favor of Judge Johnstone. The basis for its decision was as follows:

It is declared that AS 22.25.011 is unconstitutional as a denial of equal protection under the law for it creates two separate classes of judges doing identical work and the first class appointed before July 1, 1978, can never be subject to the requirements of the statute even though they may commence new terms or new judicial positions after July 1, 1978.

The lower court directed the state to cease deducting seven per cent from Judge Johnstone's salary and further ordered it to return to him all amounts previously collected. It also awarded Judge Johnstone $1,500 in attorney's fees. The state has appealed.

It is clear from the record below that had AS 22.25.011 read, "Each justice and judge *commencing a new term of office* after July 1, 1978 shall contribute seven per cent," the lower court would have found the statute constitutionally valid. Article IV, section 13 of the Alaska Constitution provides:

Justices, judges and members of the judicial council and the Commission on Judicial Qualifications shall receive compensation as prescribed by law. *Compensation of justices and judges shall not be diminished during their terms of office,* unless by general law applying to all salaried officers of the State.

(Emphasis added).

■ Were the legislature to implement a contributory judicial retirement system[3] by exacting salary deductions from justices and judges "during their terms of office," it would clearly run afoul of the compensation clause of article IV, section 13. Requiring a judge to contribute via a salary deduction to a retirement system diminishes a judge's compensation. *See Carper v. Stiftel,* 384 A.2d 2, 6–7 (Del.1977); *Wilson v. Marsh,* 162 Neb. 237, 75 N.W.2d 723, 730 (Neb.

1956). If there is to be a contributory retirement system, exempting justices and judges already in office from the duty of contribution during their terms of office would therefore be constitutionally compelled by article IV, section 13.

■ Institution of a contributory retirement system, rather than one which is noncontributory, will substantially further a legitimate economizing purpose. Since no suspect classifications or fundamental rights are involved, AS 22.25.011 does not violate either the federal or the state equal protection clauses. *See Rose v. Commercial Fisheries Entry Commission,* 647 P.2d 154, 158–59 (Alaska 1982); *Pharr v. Fairbanks North Star Borough,* 638 P.2d 666, 669–70 (Alaska 1981). Differences in compensation between otherwise similarly situated judges which result from a state's compensation clause have readily withstood federal equal protection scrutiny. *See Kavanagh v. Brown,* 206 F.Supp. 479, 482–85 (E.D.Mich.), *aff'd per curiam,* 371 U.S. 35, 83 S.Ct. 143, 9 L.Ed.2d 112 (1962); *Taylor v. State,* 360 Mich. 146, 103 N.W.2d 769, 773–74 (Mich. 1960); *Shubat v. State,* 157 Mont. 143, 484 P.2d 278, 284–86 (Mont.1971). Furthermore, if the disparate treatment occasioned by AS 22.25.011 is mandated by article IV, section 13 of the Alaska Constitution, a state equal protection challenge will similarly be of no avail. *Cf. Park v. State,* 528 P.2d 785, 786–87 (Alaska 1974) ("It is a well accepted principle of judicial construction that whenever reasonably possible, every provision of the Constitution should be given meaning and effect, and related provisions should be harmonized").

AS 22.25.011 states, however, that justices and judges *"appointed"* after July 1, 1978 must contribute. As is evident from the trial court's memorandum of decision, it is the legislature's use of that word which the court found repugnant. The lower court reasoned that since justices and judges appointed prior to July 1, 1978 "may

---

**3.** That the state may validly implement a contributory judicial retirement system is clear. Alaska Const. art. IV, § 11 provides in relevant part:

Justices and judges shall be retired at the age of seventy except as provided in this article. The basis and amount of retirement pay shall be prescribed by law.

commence new terms" after that date, article IV, section 13 does not require that the legislature forever exempt such justices and judges from having to contribute to the retirement system. The lower court obviously construed the phrase "terms of office" in article IV, section 13 as referring to the ten year and six year intervals between retention elections for justices and judges, respectively, established by article IV, section 6 of the Alaska Constitution.[4] Judge Johnstone argues that this is the proper construction of that phrase. The state, on the other hand, maintains that for purposes of article IV, section 13 justices and judges serve a single term of office until rejected by the electorate.

Before addressing this issue, we think it appropriate to note that its resolution is, indirectly at least, of financial interest to the members of this court. For example, were we to construe the phrase "terms of office" in article IV, section 13 as urged by Judge Johnstone, and hold AS 22.25.011 unconstitutional, it is conceivable that the legislature might enact a statute requiring justices and judges presently on the bench to contribute to the retirement system upon gaining approval at their next retention election. The existence of such a financial interest calls into question the propriety of this court deciding the case. *See* Code of Judicial Conduct, Canon 3(C)(1). While article IV, section 16 of the Alaska Constitution confers authority on the Chief Justice to "assign judges from one court or division thereof to another for temporary service," all such judges likewise have a financial interest in the outcome of this case.

█ Fortunately, this dilemma has been dealt with before. In cases such as this, the law recognizes that it may become necessary for a court to render a decision notwithstanding that the court has a financial interest in the matter. *See, e.g., United States v. Will,* 449 U.S. 200, 213–16, 101

S.Ct. 471, 480–81, 66 L.Ed.2d 392, 405–06 (1980); *Atkins v. United States,* 556 F.2d 1028, 1035–40 (Ct.Cl.1977); *Olson v. Cory,* 27 Cal.3d 203, 164 Cal.Rptr. 217, 220, 609 P.2d 991, 994 (Cal.1980). Under the rule of necessity "a judge is not disqualified to try a case because of his personal interest in the matter at issue if there is no other judge available to hear and decide the case." *Atkins v. United States,* 556 F.2d at 1036. To hold otherwise "would result in a denial of a litigant's constitutional right to have a question, properly presented to such court, adjudicated." *State ex rel. Mitchell v. Sage Stores Co.,* 157 Kan. 622, 143 P.2d 652, 656 (Kan.1943) (quoted with approval in *United States v. Will,* 449 U.S. at 214, 101 S.Ct. at 480, 66 L.Ed.2d at 405). The rule of necessity is applied in cases where "[t]o disqualify one would disqualify all...." *Olson v. Cory,* 164 Cal.Rptr. at 220, 609 P.2d at 994. That being the situation here, we conclude that this case is a proper one in which to invoke the rule.

Turning to the merits, both parties rely heavily on *Buckalew v. Holloway,* 604 P.2d 240 (Alaska 1979) in support of their respective positions concerning the meaning of "terms of office" for purposes of article IV, section 13. In that case the court was called upon to construe the meaning of the word "terms" as used in article IV, section 4 of the Alaska Constitution. That section states:

> Supreme court justices and superior court judges shall be citizens of the United States and of the State, licensed to practice law in the State, and possessing any additional qualifications prescribed by law. Judges of other courts shall be selected in a manner, *for terms,* and with qualifications prescribed by law.

(Emphasis added). At issue was the validity of AS 22.15.170(c), which in pertinent part provides that "[e]ach magistrate serves

---

4. Alaska Const. art. IV, § 6 provides:

Each supreme court justice and superior court judge shall, in the manner provided by law, be subject to approval or rejection on a nonpartisan ballot at the first general election held more than three years after his appointment. Thereafter, each supreme court justice shall be subject to approval or rejection in a like manner every tenth year, and each superior court judge, every sixth year.

*at the pleasure of* the presiding judge of the superior court in the district for which appointed." (Emphasis added). Holloway, a magistrate who had been terminated pursuant to this statute, claimed that "at the pleasure of" did not comport with the requirement of article IV, section 4 that "[j]udges of other courts shall be selected . . . for terms . . . prescribed by law." According to Holloway, the word "terms" as used in that section referred to a period of service fixed in time. We disagreed, stating that: "[W]e do not believe it was intended to imply such a precise limitation. A broader definition of the word, 'the time for which something lasts' . . . is in closer accord with the apparent purposes of article IV, section 4." 604 P.2d at 244 (footnote omitted).

In reaching our decision in *Buckalew,* we did note in passing that article IV, section 6, governing judicial retention elections, "specifies the 'terms' of the justices and judges of the supreme and superior courts." *Id.* According to Judge Johnstone, this statement is dispositive of the issue raised here. However, that sentence must be read in its proper context. For we went on to explain that "[t]he 'terms' thus delineated constituted a rejection of the federal judicial system, in which federal judges serve no 'term', but remain in office for life unless impeached." *Id.* (footnote omitted). By no means were we purporting to say that the word "terms" for purposes of article IV, section 13 necessarily refers to the intervals between retention elections set forth in article IV, section 6. Indeed, we suggested that the word "terms" as used in article IV, section 13 had a different meaning:

> As originally adopted, the constitution . . . used "term" generally to describe the period in office of all justices and judges, art. IV, § 13.

> With the exception of art. IV, whereever "term" or "service at the pleasure of" appears in the constitutional text originally adopted . . . the reference is to a period of service for a particular office, thus allowing the drafters to be precise, in their terminology. The language of

art. IV, §§ 4 and 13, on the other hand, applies to any judge of any court the legislature might create, and "term" in that context may intend only the more general, though equally valid connotation of any limitation on a period of service. *Cf.* Webster's Third New International Dictionary (1971) ("a limited *or* definite extent of time"); Black's Law Dictionary (4th ed. 1968) ("the period during which elected officer or appointee is entitled to hold office").

604 P.2d at 244 nn. 13, 14.

■ In our view, the phrase "terms of office" as used in article IV, section 13 means the period during which a justice or judge is entitled to hold office. Under our constitutional framework, a justice or judge commences office when appointed by the Governor to fill a vacancy. Alaska Const. art. IV, § 5. The office does not become vacant until "ninety days after the election at which he is rejected by a majority of those voting on the question, or for which he fails to file his declaration of candidacy to succeed himself." *Id.* art. IV, § 7. Between such times the office is not vacant and the justice or judge appointed to the office is thus entitled to hold it.

To hold otherwise would, in our judgment, vitiate the proscription against diminishing the compensation of justices and judges during their terms of office. In discussing the compensation clause found in article III, section 1 of the federal constitution, the United States Supreme Court has noted:

> The Compensation Clause has its roots in the longstanding Anglo-American tradition of an independent Judiciary. A Judiciary free from control by the Executive and the Legislature is essential if there is a right to have claims decided by judges who are free from potential domination by other branches of government. . . . Hamilton, in The Federalist No. 79, p. 491 (1818) (emphasis deleted), emphasized the importance of protecting judicial compensation:

"In the general course of human nature, a power over a man's subsistence amounts to a power over his will." *United States v. Will,* 449 U.S. 200, 217–18, 101 S.Ct. 471, 482, 66 L.Ed.2d 392, 407–08 (1980). That the drafters of Alaska's constitution sought to insulate the judiciary from political pressure that might interfere with its impartiality is clear: "There is no doubt that judicial independence was a paramount concern of the delegates...." *Buckalew v. Holloway,* 604 P.2d 240, 245 (Alaska 1979) (footnote omitted); *see* 1 Proceedings of the Constitutional Convention 586–602. Were we to construe article IV, section 13 as urged by Judge Johnstone, the legislature could diminish a justice's or judge's compensation every ten or six years, respectively. Such a construction, we believe, would be contrary to the underlying purpose of the compensation clause.

■ Accordingly, we hold that justices and judges do not commence new "terms of office" for purposes of article IV, section 13 upon gaining the electorate's approval in a retention election. It follows that the legislature, in implementing a contributory judicial retirement system, could not constitutionally require members of the judiciary already in office to contribute to such a system via a salary deduction. That being the case, the legislature's use of the word "appointed" in AS 22.25.011 of necessity passes muster under equal protection. *See, e.g., Kavanagh v. Brown,* 206 F.Supp. 479, 482–85 (E.D.Mich.), *aff'd per curiam,* 371 U.S. 35, 83 S.Ct. 143, 9 L.Ed.2d 112 (1962). The lower court therefore erred in holding AS 22.25.011 unconstitutional on equal protection grounds.

Judge Johnstone also has argued that the judgment of the superior court can be affirmed on another ground. His argument is that AS 22.25.011 violates article XII, section 7 of the Alaska Constitution[5] because the statutory requirement that judi-

cial contributions be credited into the general fund rather than a separate account constitutes an impairment of accrued benefits. This argument has, however, been mooted by the 1982 amendments to AS 22.25.011[6] and by related legislation establishing a judicial retirement system. AS 22.25.048.

The judgment of the superior court is REVERSED.

CONNOR, J., not participating.

RABINOWITZ, Justice, concurring.

I disagree with the court's conclusion that justices and judges do not commence new "terms of office" for purposes of article IV, section 13 upon gaining the electorate's approval in a retention election. Thus, I would hold that article IV, section 13 does not compel the use of the word "appointed" in AS 22.25.011.

My reasons for disagreeing with the court's holding that the phrase "terms of office," as used in article IV, section 13, refers to the periods which a justice or judge is entitled to hold office are as follows:

In *Buckalew v. Holloway,* 604 P.2d 240 (Alaska 1979), we said in part:

Article IV, section 6 specifies the "terms" of the justices and judges of the supreme and superior courts:

Each supreme court justice and superior court judge shall, in the manner provided by law, be subject to approval or rejection on a nonpartisan ballot at the first general election held more than three years after his appointment. Thereafter, each supreme court justice shall be subject to approval or rejection in a like manner every tenth year, and each superior court judge, every sixth year.

The "terms" thus delineated constituted a rejection of the federal judicial system, in

---

5. Art. XII, § 7 of the Alaska Constitution states:

   *Retirement Systems.* Membership in employee retirement systems of the State or its political subdivisions shall constitute a con-

tractual relationship. Accrued benefits of these systems shall not be diminished or impaired.

6. *See* note 1 *supra.*

which federal judges serve no "term", but remain in office for life unless impeached. The framers of the Alaska Constitution expressly sought a system in which justices and judges would be accountable for their performance in office.

604 P.2d at 244 (footnote omitted).

In my view, this language supports Judge Johnstone's contention that the *Buckalew* court·concluded that judicial terms delineated by article IV last from one retention election to the next. The rejection of the federal scheme essentially repudiated a system in which it was presumed that a judge sat on the bench indefinitely once appointed. Furthermore, a judge had a right to stay on the bench for life unless impeached. Alaska adopted a compromise between "elective" and "appointive" methods of selection of the judiciary, creating a system in which a judge has a right to remain on the bench only until the next retention election, barring impeachment. Thus, he has a definite "term of office," which may be renewed but is not his by right thereafter. Cases interpreting constitutional clauses limiting the power of the legislature to alter official salaries during a "term of office" almost unanimously construe "term" to refer to the period during which an officer occupies his position by right.[1]

The conclusion that judges and justices serve a single term during their tenure on the bench is belied by the words of George McLaughlin, Chairman of the Constitutional Judicial Committee. After explaining the rationale for the proposed article IV compromise between "appointive" and "elective" judicial systems, he set out the scheme for retention elections:

> I might carry on a bit and point out *what happens in terms after the governor does appoint from the list presented to him* as under the Missouri Plan. Roughly, three and one-half or four years later, the judge is required, every judge without exception, is required to go on the ballot for approval by the voters. Does he have to spend any money? No sir. What is the requirement? The only requirement on a nonpartisan ballot could be, "Shall Judge 'Blank' be retained in office?" The Missouri Plan provides and the New Jersey Plan in substance provides (my figures are rough), that roughly a year and one-half after appointment the judge will be put on the ballot to determine whether or not the public desires to retain him. It was the view of the Committee that in order to attract good men to become candidates, the only way we could assure the attraction of good candidates was to assure them they would be in office at least for a period of three and one-half years.

1 Proceedings of the Constitutional Convention 585–86 (emphasis added).

In discussing particularities, he again referred to the interval between retention elections as a "term":

> As I presume, the question is, why did we determine that the judges of the su-

1. *See* the following cases construing "term" as used in constitutional clauses prohibiting decreases or increases in compensation during the terms of office of designated officials. *Bayley v. Garrison,* 190 Cal. 690, 214 P. 871 (Cal. 1923):

> " 'The general rule, however, seems to be that this constitutional prohibition against changing the salary of a public officer during his term of office applies only to officers who have a fixed and definite term, and does not apply to appointive officers, who hold only at the pleasure of the appointing power.' "

214 P. at 872, *quoting* 37 L.R.A.(N.S.) 389. *Kratzer v. Commonwealth,* 228 Ky. 684, 15 S.W.2d 473 (Ky.App.1929):

> As applied to office the word "term" speaks with reference to the office itself, and not to

the tenure of the incumbent . . . . It means the fixed period of time during which an officer or appointee is entitled to hold the office, perform its functions, enjoy its privileges and emoluments.

15 S.W.2d at 474–75 (citation omitted). *State v. Board of Commissioners,* 29 N.M. 209, 222 P. 654 (N.M.1924):

> It has been many times held that such a provision does not apply to an office held during the pleasure of and subject to removal of the appointing power . . . . This is due to the fact that such persons have no "term of office" within the intendment of such constitutional provision. To come within its terms an office must have a fixed and definite tenure of office.

222 P. at 655.

preme court should serve ten years. I personally voted for twelve. The Committee decided that ten was the average, and the Committee when it decided that ten was the average, followed the recommendation of the conference of the Chief Justices of the United States, at which they recommended that *the term of judges of the appellate courts be not less than ten years.* In fact, as I say, I reduced it two years, and Mr. Robertson decreased his an intangible amount, from lifetime to ten years. As the practice is in other courts, that is those which have revised their judiciary article in recent years, California, *the supreme court has a term of twelve years.* All justices of the supreme court, district court—that is the intermediate appellate courts—is twelve years, and the superior court, which is the trial court, is six years. In New Jersey, the supreme court judges *hold for seven years . . . .* It is the feeling of the Committee, because of the selective process, that is, screening for initial appointment and the fact that four years thereafter, every judge, that is, a maximum of four years, every supreme court judge and every superior court judge would be up for re-election, that there would be enough of a public control over them that *long terms* would be more desireable.

*Id.* at 611–12 (emphasis added).

Delegate Victor Rivers, also used "term" to refer to that interval:

Now we ask that the judge sit inviolate in that position for ten years. If he is a good judge, a fair and just judge, it is my opinion that he should have no fear in going before the electorate, because it has been my observation that a man who sticks to his principles and does not compromise principles with expediency and is generally known to be honest will even be elected and re-elected to political office. Six years is a *term* for which we elect a senator.

*Id.* at 613 (emphasis added). From these excerpts, it is clear that the framers conceived of the "terms" of judges and justices

enduring until the electorate expressed its opinion at scheduled retention elections.

Despite my conclusion that article IV, section 13, does not furnish justification for the use of "appointed" in AS 22.25.011, I concur in the court's holding that the statute "passes muster under equal protection."

Article XII, section 7 of the Alaska Constitution provides:

Membership in employee retirement systems of the State or its political subdivisions shall constitute a contractual relationship. *Accrued benefits . . . shall not be diminished or impaired.* (emphasis added)

In my view, the existence of this constitutional provision justifies the use of the word "appointed" in AS 22.25.011. For under the provisions of article XII, section 7, justices and judges appointed on or before July 1, 1978, are constitutionally entitled to receive benefits under the non-contribution retirement system established prior to the enactment of AS 22.25.011. Thus the legislature is precluded from requiring such judges to contribute toward their retirement benefits even when they commence new "terms of office."

In *State v. Allen,* 625 P.2d 844 (Alaska 1981), we considered whether officials who were participating in the Elected Public Officers Retirement System (EPORS) at the time of its repeal by referendum, but who were not then entitled to benefits, would be entitled to benefits under that system upon retirement. Although the system had remained in effect for only 9½ months, this court concluded, on the strength of article XII, section 7, that they would. In reaching this holding we further concluded that "rights accrued by [public officials] under EPORS were not subject to any implied condition subsequent to repeal by the electorate and that those rights remain fully enforceable." [2]

In *Hammond v. Hoffbeck,* 627 P.2d 1052 (Alaska 1981), we again addressed the requirements of article XII, section 7. The issue was the validity of certain amend-

2. *See Allen,* 625 P.2d at 849.

ments to Public Employees Retirement System [PERS] which reduced disability and death benefits. We held that an employee's rights in a system such as PERS vest upon employment and enrollment in the system, rather than at the time an employee became eligible for benefits. We further held the amendments unconstitutional as to those employees which had been hired prior to the amendments and who did not elect to be covered by the system as amended.[3]

In my view, *State v. Allen* and *Hammond v. Hoffbeck* preclude the legislature from requiring the members of the judiciary appointed on or before July 1, 1978, from contributing toward their retirement benefits, absent some offsetting comparable new advantage.[4] Therefore, I concur with the court's holding that the superior court erred in ruling AS 22.25.011 unconstitutional on equal protection grounds.

---

**3.** *See Hammond,* 627 P.2d at 1055–57, 1059.

**4.** In *Hammond,* we said that article XII, section 7 "does not preclude modifications of the system; [it] does, however, require that any changes in the system that operate to a given employee's disadvantage must be offset by

comparable new advantages to that employee." 627 P.2d at 1059.

