## No. 27240

**The People of the State of Colorado, by and on behalf of The People of the City of Thornton v. Honorable John F. Horan, County Judge, County Court of Adams County**

(556 P.2d 1217)

Decided November 22, 1976.                    Rehearing denied December 20, 1976.

Daniel, McCain & Brown, for petitioners.

Stitt, Wittenbrink, and Roan, P.C., Richard M. Borchers, for respondent.

Joseph G. Studholme, for amicus curiae, Colorado Municipal Judges Association.

*En Banc.*

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

Nancy McCoy and R. J. Wittenbrink were cited for violating the traffic laws of the City of Thornton in early 1975. They moved to dismiss the charges on the ground that Thornton's city charter provides for judges who sit at the pleasure of the city council. The motions were denied. McCoy and Wittenbrink were subsequently found guilty by the municipal court and they appealed to the county court.

In the county court, they renewed their motion to dismiss. County Judge John Horan, the respondent here, dismissed the actions, holding: 1) that Colorado's constitutional and statutory provisions do not allow home

rule cities to provide for municipal judges without tenure, and 2) that a trial before a nontenured judge violates the due process and equal protection clauses of the Colorado and United States Constitutions.

We issued a rule to show cause why the judgment of the county court should not be set aside and the actions reinstated. We now make the rule absolute.

## I.

Article XX, Section 6 of the Constitution of the State of Colorado authorizes a home rule city to enact charter provisions providing for the election or appointment of the officers of municipal courts. It specifically points out that matters dealing with the creation and staffing of municipal courts are local matters. The City of Thornton had adopted a home rule charter establishing municipal courts, with its judges appointed by the city council serving at the council's pleasure. Respondent argues, however, that the Colorado legislature has statutorily required that municipal judges be tenured and that the matter is one of statewide concern. Under such circumstances, they contend, the statutes govern, rather than the charter. *See Hardamon v. Municipal Court*, 178 Colo. 271, 497 P.2d 1000 (1972); *Bennion v. City and County of Denver*, 180 Colo. 213, 504 P.2d 350 (1972); *Davis v. City and County of Denver*, 140 Colo. 30, 342 P.2d 674 (1959).

Section 13-10-105(1)(a), C.R.S. 1973, provides in relevant part:
*"Unless otherwise provided in the charter of a home rule city*, the municipal court shall be presided over by a municipal judge who shall be appointed by the municipal governing body for a specified term of not less than two years. . . ."* (emphasis added)
Read in context with Article XX, Section 6, it is clear that the statute's unambiguous language offers home rule cities, such as Thornton, the opportunity to specify the terms under which a municipal judge holds his office. Thornton's decision to appoint judges removable at the will of the city council is consistent with Section 105.

Moreover, it is apparent that the legislature itself recognized the power of home rule cities in this area given by the constitution when it enacted section 13-10-103, C.R.S. 1973. That section provides:
*"Applicability.* This article shall apply to and govern the operation of municipal courts in the cities and towns of this state. *Except* for the provisions relating to the method of salary payment for municipal judges, the right to a trial by jury for petty offenses provided for in Section 16-10-109, C.R.S. 1973, rules of procedure promulgated by the supreme court, and appellate procedure, *this article may be superseded by charter or ordinance enacted by a home rule city."* (emphasis added)
The fact that the term of office for municipal judges is not included in the exceptions clearly indicates the legislature's recognition that the tenure decision lies in the hands of the citizens of home rule cities.

Finally, a recent action by the legislature has demonstrated that terms of office for judges that do not provide tenure are not against the public policy of the state. Section 31-4-208, C.R.S. 1973 (1975 Supp.), directs that municipal judges in statutory cities with a city manager form of government sit at the pleasure of the city council.

In the context of the discussion above, it is apparent *Hardamon v. Municipal Court, supra*, dealing with the right to jury trial in municipal courts, is inapposite.

## II.

Respondent contends that even if Colorado's statutory scheme does provide for nontenured judges, such a system is violative of the due process and equal protection guarantees of the Fourteenth Amendment of the United States Constitution.

The respondent cites as authority for his position, *Ward v. Village of Monroeville*, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972). We think that case is not authority for the proposition asserted here. There the United States Supreme Court held that a mayor-judge could not be impartial in his judicial duties since the income of the village, for which he had executive responsibility, depended upon the amount of money collected by way of fines he imposed. Of course, where the mayor-judge's personal income depends on the fines, due process is violated. *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927). Conversely, where a mayor-judge neither had the major executive function nor a personal pecuniary interest, there is no constitutional violation. *Dugan v. Ohio*, 277 U.S. 61, 48 S.Ct. 439, 72 L.Ed. 784 (1928). In the present case, there is no hint that Thornton's municipal judges have a direct financial interest as in *Tumey*, nor do they act in any executive capacity as in *Ward*. The question then becomes whether a defendant has a Constitutional right to a trial before a tenured judge *absent any evidence of bias.*

The Supreme Court of the United States has had the occasion to comment on this question in *Palmore v. United States*, 411 U.S. 389, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973). The Court held that a defendant was not deprived of due process when he was found guilty in the Superior Court for the District of Columbia before a judge without lifetime tenure even though federal district judges hearing criminal cases held lifetime tenure. Justice White compared that defendant to. citizens of the fifty states who are charged in state court with violations of state law. He concluded that "Neither has a federal constitutional right to be tried before judges with tenure and salary guarantees." *Palmore, supra*, at 391. We find no violation of the due process clause in a trial before a nontenured judge.

Nor is respondent's equal protection claim of any validity. This court has, in the past, examined provisions which treat certain municipalities differently and has found them not to be in violation of the Equal

Protection Clause. *Cf. Board of County Commissioners v. City and County of Denver*, 150 Colo. 198, 372 P.2d 152 (1962), *appeal dismissed*, 372 U.S. 226, 83 S.Ct. 679, 9 L.Ed. 2d 714 (1963); *Francis v. County Court in and for the City and County of Denver*, 175 Colo. 308, 487 P.2d 375 (1971). The basic inquiry is whether the difference in treatment leads to arbitrary, irrational results. There is nothing before us in this case to show that a trial before a nontenured judge in and of itself is sufficient to taint the fairness of the trial, thereby denying due process or equal protection.

We are not unmindful of the amicus' concern that public confidence may be undermined by the fact that the municipal judge serves at the pleasure of the appointing authority. We point out, however, as we have done before, that the Constitution of the United States does not, by its guarantee of the republican form of government, guarantee the doctrine of separation of powers to the states. *See In Re Interrogatories Propounded By the Senate*, 189 Colo. 1, 536 P.2d 308 (1975), and the rather lengthy discussion of this point. As we have also pointed out previously, all the power of government in this state flows from the people as required by the republican form of government and the people of this state and the people of Thornton have authorized the present system. So long as there is no *evidence* to reflect a violation of the due process clause of the Federal Constitution, we cannot substitute our philosophy for that of the people of this state and the citizenry of Thornton.

The rule is made absolute and the respondent is directed to reinstate the actions involved here.

MR. JUSTICE ERICKSON concurs in result.

MR. JUSTICE CARRIGAN dissents.

MR. JUSTICE CARRIGAN dissenting:

I respectfully dissent as to all portions of the majority opinion dealing with constitutional issues.

I have no quarrel with the majority opinion's interpretation of the statutes and Municipal Home Rule provisions of the Colorado Constitution. However, the majority opinion does not adequately meet the fundamental constitutional issues raised by the respondent and by amicus curiae, the Colorado Municipal Judges Association.

Defendants in a Thornton Municipal Court prosecution claimed they were denied the fair and impartial tribunal essential to due process because the City, which is prosecuting them, has power to remove and replace the judge at its pleasure. They also claimed denial of equal protection because some municipal court judges are appointed for at least two-year terms, whereas others serve at the pleasure of the city which appoints them.

Respondent County Court judge found denials of both due process of law and equal protection. He ruled:

"The Court further finds it is a matter of law that a municipal judge cannot consciously or subconsciously erase the fact that his continued position and financial interest from that position as a municipal judge rests on the daily reality that the city council may remove him for any reason or without any reason at any time in its sole discretion."

The initial inquiry is whether municipal courts are truly courts, existing as part of the judicial branch of government and exercising judicial powers, or mere city administrative agencies. If they are courts, within the judicial branch of government, they must be accorded the attributes of courts, including reasonable independence from control by nonjudicial branches of government.

Municipal courts have been established by legislative enactment, C.R.S. 1973, 13-10-101, *et seq.* They have jurisdiction to "hear and try all alleged violations of ordinance provisions of such city or town," C.R.S. 1973, 13-10-104, and therefore, the City of Thornton is a litigant in all cases heard before the Thornton Municipal Court. "All judicial powers" are vested in the municipal judge, subject to rules promulgated by the Colorado Supreme Court. C.R.S. 1973, 13-10-112. Colorado Municipal Court Rules of Procedure have been adopted by this Court. These grants of judicial authority, together with placement of supervisory and rule-making authority in this Court, clearly demonstrate that municipal courts are, and are intended to be, not administrative agencies, but *courts*, within the judicial branch of government.

One of the attributes of every court, under familiar principles of separation of powers, is a reasonable degree of independence from control by other branches of government. *Smith v. Miller* 153 Colo. 35, 384 P.2d 738 (1963). Unless otherwise provided by the charter of a home rule city, the statute decrees that municipal judges are to be appointed for *minimum* terms of two years. Thus the problem here presented does not affect the many municipal courts in this state where a degree of judicial independence has been provided by appointing judges for fixed terms of two years or more.

But the charter of Thornton, a home rule city, provides that municipal judges there are appointed to serve *at the pleasure* of the city council. By jurisdictional definition, the City of Thornton is always a party in any case filed in its municipal court. C.R.S. 1973, 13-10-104. Thus, one litigant before the court has the power to remove the judge if his decision should displease that litigant. No insulation whatever is provided to insure the judges' independence.[1] There are neither provisions for a fixed term of

---

[1] Clearly, a statute, or state constitutional provision to the effect that members of *this* court serve "at the pleasure" of the Governor, or the General Assembly, would violate the separation of powers doctrine.

office, nor guidelines for removing the judges for cause. For example, if the city council disagrees with a judge's interpretation of a particular ordinance, it may remove him and immediately substitute a judge whose interpretation of the ordinance accords with that of a majority of the city council. Similarly, if the city council feels that the judge is imposing inadequate fines, and thus the city's revenues are suffering, he can be told to increase the fines or face immediate discharge.

In fact, a Thornton judge could be removed in the midst of trial if one of his rulings were distasteful to a majority of the city council. At any time, and as to any case, one of the litigants, the city, has the power to choose the judge who will hear the case. This situation is abhorrent to the concept of fundamental fairness and so inherently likely to deprive the court of real independence as to deny litigants opposing the city the impartial tribunal required as an element of due process. *Ward v. Village of Monroeville*, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972); *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927).

The majority opinion seeks to distinguish *Ward* and *Tumey* on the grounds that in *Ward* the judge occupied an executive as well as a judicial office, and in *Tumey* the judge had a direct pecuniary interest in the fines he assessed. In my view there is no difference in substance. The implicit and omnipresent threat that a Thornton judge can be removed immediately without cause hangs like the sword of Damocles above his bench as he rules on cases. The single hair by which it hangs is the "pleasure" of the city council whose attorney litigates before him.

In such a situation it is not adequate to brush off the due process argument, as the majority opinion has, by the assertion that there was no showing of actual bias of a specific municipal judge in a particular prosecution. This is not a case where it is claimed that the scheme providing that a municipal judge serve "at the pleasure" of the city council is unconstitutional in its application to a particular litigant. The claim is broader: that the scheme is unconstitutional on its face as applied to all defendants prosecuted in such courts. Moreover, to impose a burden of proof that one show by evidence that the attitude of a particular judge was altered because he might be removed is to impose an impossible burden. We live in a real world, and courts need not close their eyes to the obvious. Indeed, if anyone knows the effect of the city's removal power, surely it is the municipal judges. The Colorado Municipal Judges Association argues, in its amicus brief:

*"How can a judge remain neutral and detached when the performance of his duty before a party to an action, i.e., the City of Thornton, is itself judged by that same party having the power to retain or discharge the judge without justification?* As long as the City may discharge its municipal judge for reasons which may be arbitrary and capri-

cious, *the subtle incentive to protect his position must always sit alongside the judge when he renders his decision.*"

Nor can it any longer be argued that the availability of a de novo review in the county court cures the defect. In *Ward, supra*, the United States Supreme Court expressly rejected that argument, holding that a defendant is entitled to a neutral and detached judge in the first instance. This rationale is especially appropriate here 'where the small amounts of fines involved may tempt a litigant to accept an unjust result rather than incur the expense and loss of time required to appeal the case for a trial de novo. For may law-abiding citizens, the municipal court is their only contact with the judicial system. Therefore, it is essential to public confidence in the court system that litigants perceive municipal courts as fair, independent tribunals.

In *People v. Mullins*, 532 P.2d 736 (Colo. 1975), we addressed the question of whether due process is denied or separation of powers violated because this Court appoints the Colorado Public Defender and fixes the amount of his compensation. There we held:

"Although the public defender is appointed by the Supreme Court, his office is afforded certain protections by the statute. The State Public Defender is appointed for a term of five years, can be removed only for cause, and his salary is not subject to diminution during his term of office." 532 P.2d at 739.

None of these insulating protections, thought essential to the constitutionality of the Public Defender plan, are present in the instant situation to shield the independence of Thornton's municipal judges.

It is no answer, as the majority opinion implies, that the people by state constitutional amendment have authorized the municipal court system here under attack. The supremacy clause of the United States Constitution precludes the people of this state from adopting, by state constitution, any provision which would violate the due process clause of the United States Constitution. *U.S. Const.* Art. VI § 2 and Amdt. XIV. *See People v. Western Union Telegraph Co.*, 70 Colo. 90, 198 Pac. 146 (1921); *People v. Max*, 70 Colo. 100, 198 Pac. 150 (1921).

Nor can the majority opinion draw any meaningful support for appointing judges to serve "at the pleasure" of the city council from its citation of *Palmore v. United States*, 411 U.S. 389, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973). That case dealt with the Superior Court for the District of Columbia, a court whose judges are appointed by the President for terms of fifteen years, during which their salaries may not be reduced. Such judges obviously have far more independence than those involved here.

As Alexander Hamilton recognized in No. 79 of the Federalist papers:[2] "In the general course of human nature, a power over a man's

---

[2] *The Federalist* No. 79, at 107 (Dunne Ed. 1901)(A. Hamilton).

subsistence amounts to a power over his will." Human nature has not changed much in the intervening two centuries.

Today, in the wake of Watergate, this Court should be particularly sensitive that an independent judiciary is indispensable to preservation of freedom under our system of government. Recent history provides stark examples of what may occur when judges are rendered subservient. Willig, *The Bar in the Third Reich*, 20 The American Journal of Legal History 1 (1976).

I would hold unconstitutional as a denial of Fourteenth Amendment due process the practice of appointing judges to serve at the pleasure of the city council of the municipality which prosecutes cases in that court. Therefore, I would find it unnecessary to reach the equal protection issue.