695 P.2d 1094

John E. WINTER, Plaintiff-Appellee,

v.

Chauncey B. COOR, both individually and as Mayor of the Town of Goodyear; Carl K. Gow, both individually and as Vice Mayor of the Town of Goodyear; John N. Maxwell; Ilo E. Gregory; Elaine D. Nesvig and Barbara W. La-Prade, both individually and as members of the Goodyear Common Council; and the Town of Goodyear, an incorporated town, Defendants-Appellants.

Sam RUA, Plaintiff-Appellant,

v.

Marylou Chavez ACOSTA, both individually and as Mayor of the Town of Superior; Joe Luevano; Virginia Mitchell; Robert Ewing; Emilio Ulibarri; Mike Urquijo; and Christine Valenzuela, both individually and as members of the Superior Town Council; and the Town of Superior, an incorporated town, Defendants-Appellees.

Nos. 17332, 17474.

Supreme Court of Arizona, En Banc.

Jan. 16, 1985.

Reconsideration Denied March 19, 1985.

Lewis & Roca by Paul G. Ulrich, Phoenix, for plaintiff-appellee John E. Winter and plaintiff-appellant, Sam Rua.

Burns & Burns by F. Britton Burns, J. Scott Burns, Phoenix, for defendants-appellants Chauncey B. Coor, et al.

Johnson & Shelley by J. LaMar Shelley, Mesa, for amicus curiae League of Arizona Cities & Towns.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Scott A. Salmon, Larry L. Smith, Richard J. Woods, Phoenix, for defendants/appellees Marylou Chavez Acosta, et al.

HOLOHAN, Chief Justice.

These two cases raise the same issues concerning the constitutionality of town codes which allow their councils to remove town magistrates from office at will. Because these issues affect many cities and towns in this state which have similar town code provisions, the appeals were transferred to this court pursuant to Rule 19, Rules of Civil Appellate Procedure.

In No. 17332, appellee John Winter was appointed Town Magistrate for the Town of Goodyear in 1979. At all times pertinent to this appeal, Section 5–2–1 of the Goodyear Town Code provided:

Section 5–2–1 *Town Magistrate*

The presiding officer of the magistrate's court is the town magistrate, who is appointed by and shall serve at the pleasure of the council. He shall be compensated as determined by the council.

In January, 1983, the Mayor and Town Council voted to terminate Winter's appointment as Town Magistrate of Goodyear. No cause for the termination was stated.

Winter filed suit against the Mayor and Members of the Council, both individually and as town officials, and against the Town of Goodyear to regain his judgeship. On cross-motions for summary judgment, the superior court ruled that Winter had been unlawfully terminated because § 5–2–1 of the Goodyear Town Code was unconstitutional. The court ordered that Winter be reinstated with back pay. All the defendants appealed. The trial court stayed the reinstatement and payment pending appeal. Winter's petition to transfer the appeal to this court was granted.

In No. 17474, appellant Sam Rua was appointed Town Magistrate for the Town of Superior in 1981. At all times pertinent to this appeal, section 5–2–1 of the Superior Town Code provided:

Section 5–2–1 *Town Magistrate*

The presiding officer of the magistrate court shall be the town magistrate, who shall be appointed by and shall serve at the pleasure of the council. He shall receive such compensation as the council may from time to time direct by resolution.

In June 1983, the Superior Town Council voted to terminate Rua's employment as Town Magistrate. Rua filed suit against the Mayor of Superior, the Members of the Council and the Town of Superior to regain his judgeship. On cross-motions for summary judgment, the superior court entered judgment against Rua, specifically finding that § 5–2–1 of the Superior Town Code was constitutional and authorized the council to terminate the magistrate's employment without notice or cause. Rua appealed to Division Two of the Court of Appeals. The case was transferred here on this Court's own motion because of the similarity of issues in this case and in *Winter v. Coor*. We affirm the trial court's judgment in *Winter* and reverse the trial court's judgment in *Rua*.

In these appeals, the primary issue is whether town magistrate courts are part of this state's judicial department.

Article III of the Constitution of Arizona provides:

The powers of the government of the State of Arizona shall be divided into three separate departments, the Legisla-

tive, the Executive, and the Judicial; and, except as provided in this Constitution, such departments shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others.

Winter and Rua (hereinafter "the magistrates") argued that the magistrate courts are part of the integrated judicial department of Arizona as established by Article VI, § 1 of the Constitution of Arizona:

The judicial power shall be vested in an integrated judicial department consisting of a Supreme Court, such intermediate appellate courts as may be provided by law, a superior court, such courts inferior to the superior court as may be provided by law, and justice courts.

Specifically, the magistrates contend that the magistrate courts are "courts inferior to the superior court" as established by the Legislature in Title 22, chapter 4, Arizona Revised Statutes. Goodyear and Superior are towns incorporated under common council government pursuant to Title 9, chapter 2, article 3, Arizona Revised Statutes (§§ 9–231 through 9–255). A.R.S. § 22–402(A) requires that "In each city or town incorporated under the general laws of this state, there shall be a police court." The term "police court" is defined in A.R.S. § 22–401 as including "police judges' or police magistrates' courts and all other courts established by law in incorporated cities and towns." (This opinion will use the term "magistrate courts" as used by the parties.) A.R.S. § 22–403 provides:

*Presiding officer of police court; appointment; compensation; justice of the peace as police justice*

A. The presiding officer of the police court shall be a police justice, who shall be selected in a manner provided by the charter or ordinances of the city or town. He shall receive such compensation as provided by the governing body of the city or town.

B. A justice of the peace in the city or town shall be eligible to the office of police justice without thereby forfeiting his office as justice of the peace.

The magistrates' position is that magistrate courts are clearly included within this state's integrated judicial department because magistrate courts have concurrent jurisdiction with the justice courts "of violations of laws of the state committed within the limits of the city or town" in addition to their jurisdiction in cases arising from violations of town ordinances. A.R.S. § 22–402(B). Since the magistrate courts have jurisdiction over violations of state law, they must be part of the state's judiciary. As such, the magistrates conclude, town magistrates must be allowed judicial independence, and, as independent judicial officers, may not be removed at will by the town's executive or legislative officers.

Referring to this court's decision in *Mann v. County of Maricopa*, 104 Ariz. 561, 456 P.2d 931 (1969), the magistrates point out that this court held that the judicial department must retain the power of control over personnel directly connected with the operation of the courts. As we stated in *Mann:*

In their responsibilities and duties, the courts must have complete independence. It is not only exiomatic (sic), it is the genius of our government that the courts must be independent, unfettered, and free from directives, influence, or interference from any extraneous source. It is abhorrent to the principles of our legal system and to our form of government that courts, being a coordinate department of government, should be compelled to depend upon the vagaries of an extrinsic will. Such would interfere with the operation of the courts, impinge upon their power and thwart the effective administration of justice.

*Mann, supra,* at 565, 456 P.2d at 935. The magistrates argue that town magistrates must be independent of control in the operation of magistrate courts because they are court personnel more directly connected with the judicial function than the bailiff or probation officer in *Mann.* The magistrates conclude that removal of magistrates from office at will destroys the inde-

pendence of the judiciary and should not be permitted.

The individual defendants and the Towns of Goodyear and Superior (hereinafter collectively referred to as "the towns") contend that they may remove town magistrates from office at will, without any notice or opportunity to be heard, because the magistrate courts are not part of the judicial department and town magistrates are merely town employees who serve only at the pleasure of the town council. Arizona has historically followed the employment-at-will rule that, absent specific agreement to the contrary in the employment contract, an employment relationship of no fixed period is terminable at the will of either party at any time without cause or liability. *See, e.g., Daniel v. Magma Copper Co.,* 127 Ariz. 320, 620 P.2d 699 (App.1980). This rule is subject to certain public policy exceptions which the towns urge do not apply here. *See generally Leikvold v. Valley View Community Hospital,* 141 Ariz. 544, 688 P.2d 170 (1984); Pettibone, *Employment-at-Will in Arizona,* 20 Ariz. Bar J. 22 (June/July 1984).

The towns' argument is premised on the proposition that the doctrine of separation of powers at the state level does not apply to municipalities. They cite *Willsey v. Newlon,* 161 Ind.App. 332, 316 N.E.2d 390 (1974) and *Smith v. Township of Hazlet,* 63 N.J. 523, 309 A.2d 210 (1973), in which the New Jersey Supreme Court stated that "this doctrine, applicable to our Federal and State governments, generally has no applicability to municipalities." *Id.* at 530, 309 A.2d at 214.

The towns point out that Article VI, § 1 of the Arizona Constitution was substantially amended in 1960. Before that date the section read:

The judicial power of the State shall be vested in a supreme court, superior courts, justices of the peace, and such courts inferior to the superior courts as may be provided by law.

The towns argue that if the 1960 amendment had been intended to include magis-trate courts in the definition of "such courts inferior to the superior court as may be provided by law," logically the amendment would have referred to such courts by name because these courts were already in existence in 1960. Because magistrate courts were not specifically mentioned in the 1960 amendment, the towns contend that the phrase "such courts inferior to the superior court as may be provided by law" refers only to courts which may be created by the Legislature after 1960, not to courts in existence at that date. They also argue that if that phrase were meant to include magistrate courts, logically that phrase would follow rather than precede "justice courts" so that all the courts would be listed in order of decreasing jurisdiction. Therefore, the towns conclude that magistrate courts are not included in this state's judicial department.

The towns contrast the language of the Arizona Constitution in Article VI, § 1 with that in Article VI, § 3, which gives this court "administrative supervision over *all the courts of the State*" [emphasis added]. This court has issued many administrative orders governing the administration of municipal courts. *See, e.g.,* this court's Administrative Order No. 83–11, adopting standards for municipal courts. The towns correctly state that Article VI, § 3 is the sole instance in which the constitution refers to *all* the courts of the state. Therefore, the towns assert that the constitution draws a distinction between the named courts of Article VI, § 1 and the "all courts" of Article VI, § 3 to support their contention that magistrate courts are not within this state's judicial department.

■ The arguments advanced by the towns are not persuasive. It is our conclusion that the magistrate courts are indeed part of the integrated judicial department of this state. These courts have existed in Arizona since Territorial days. *See* Penal Code Title V, Chapter 1, §§ 1259, 1260 and 2243 and R.S.A. Title XIV, Chapter 1,

§ 590, Revised Statutes of Arizona (1887);[1] Penal Code, Part II, Title XXI, § 1217 and Civil Code Title XVII, Part I, Chapter I, § 1210, The Revised Statutes of Arizona Territory (1901).[2] The Legislature has never indicated that magistrate courts are anything other than a part of the judicial department, nor has this court ever considered the magistrate courts to be outside our judicial system. Either party in such a court may appeal to the superior court, A.R.S. § 22–425, which is unquestionably part of this state's judiciary. We agree with the reasoning used by the Indiana Supreme Court in *Carlson v. State*, 247 Ind. 631, 220 N.E.2d 532 (1966), in refuting an allegation that only courts specifically named in that state's constitution were protected by judicial independence. That court stated:

> The functions of the City Court of the City of Hammond are as truly judicial in character (although limited in scope) as that of any other court in the State of Indiana.... The constitutional "umbrella of protection" covers all courts in Indiana in the performance of their judicial functions—be they small or be they large.

*Id.* at 636, 220 N.E.2d at 535. The Indiana court explained that the state's legislature could, under the Indiana constitution, create courts not named in the constitution. However, Indiana state *judicial power* is granted only by the Indiana constitution and vested by that constitution in courts and judges, "who can no more be inter-

fered with by the legislature than a court or a judge created by the Constitution itself." *Id.* (quoting *State ex rel. Kostas v. Johnson*, 224 Ind. 540, 550–51, 69 N.E.2d 592, 596 (1946)).

This view is reinforced by the necessity of judicial independence for all judges. In this regard we are impressed with the forceful dissent of Justice Carrigan in *People of City of Thornton v. Horan*, 192 Colo. 144, 149–50, 556 P.2d 1217, 1221 (1976), *cert. denied*, 431 U.S. 966, 97 S.Ct. 2922, 53 L.Ed.2d 1061 (1977), detailing the dangers of a system in which a municipal judge serves "at the pleasure" of a city council:

> No insulation whatever is provided to insure the judges' independence. There are neither provisions for a fixed term of office, nor guidelines for removing the judges for cause. For example, if the city council disagrees with a judge's interpretation of a particular ordinance, it may remove him and immediately substitute a judge whose interpretation of the ordinance accords with that of a majority of the city council. Similarly, if the city council feels that the judge is imposing inadequate fines, and thus the city's revenues are suffering, he can be told to increase the fines or face immediate discharge.
>
> In fact, a Thornton judge could be removed in the midst of trial if one of his rulings were distasteful to a majority of

---

1. 1259. (Sec. 1259.) A magistrate is an officer having power to issue a warrant for the arrest of a person charged with a public offense. 1260. (Sec. 1260.) The following persons are magistrates: 1st. The justices of the supreme court; 2d, the district judges; 3d, justices of the peace; 4th, the recorders of cities; and 5th, the mayors of cities, upon whom are conferred by law the powers of justices of the peace.
2243. (Sec. 2243.) The term "police courts," as used in this title, includes police judges' courts, police courts and all courts held by mayors or recorders in incorporated cities or towns.
590. (Sec. 1.) The following shall be the courts of justice for this territory:—
 1. The supreme court.

 2. The district court.
 3. The probate court.
 4. The justices' courts, and
 5. Such other courts of a police character as may be established by law.
Revised Statutes of Arizona (1887).

2. "1217. The term 'police courts,' as used in this title includes police judges' courts, police courts and all courts held by mayors or recorders in incorporated cities or towns."
The Revised Statutes of Arizona Territory (1901). (§ 1210 of Civil Code Title XVII Part I, Chapter I of the Revised Statutes of Arizona Territory (1901) is identical to § 590 Title XIV, Chapter I of the Revised Statutes of Arizona (1887), *supra*, note 1.)

the city council.... This situation is abhorrent to the concept of fundamental fairness and so inherently likely to deprive the court of real independence as to deny litigants opposing the city the impartial tribunal required as an element of due process.

... The implicit and omnipresent threat that a Thornton judge can be removed immediately without cause hangs like the sword of Damocles above his bench as he rules on cases. The single hair by which it hangs is the "pleasure" of the city council whose attorney litigates before him.

[Footnote and citations omitted.] In addition, we note that for many citizens of this state, the magistrate courts represent their only contact with the judicial system. In 1983, there were 773,019 cases filed in this state's municipal courts. *The Arizona Courts 1983 Annual Judicial Report* 50. This great volume of cases underscores the necessity of maintaining magistrate courts as fair, independent, and impartial tribunals and the importance of preserving the public's perception of these courts as impartial and unbiased.

In view of our determination that magistrate courts are part of this state's judiciary, the next issue to be resolved is the constitutionality of the town ordinances in question here. The towns contend that even if the separation of powers doctrine does apply to municipalities, the doctrine is not violated by these ordinances. In *People of City of Thornton v. Horan, supra,* the Colorado Supreme Court held that the appointment of municipal judges who served "at the pleasure" of the city council did not violate the doctrine of separation of powers or litigants' rights to due process or equal protection. In *Horan,* a Colorado statute required that a municipal judge be appointed for a specific term of not less than two years, unless otherwise provided in the charter of a home rule city. Statutes controlling municipal court operations specifically provided that such statutes could

be superseded by city charters or ordinances.

■ We believe that *Horan* is not persuasive, not only because the Colorado statutes involved differ from those in this state, but because we find that this state's separation of powers doctrine requires that magistrates be allowed to perform their judicial functions as independent decision-makers. A case with very similar facts is *State ex rel. Morales v. City Commission of the City of Helena,* 174 Mont. 237, 570 P.2d 887 (1977). In that case a police judge for the City of Helena was appointed pursuant to a statute providing that he held his office at the will of the city commission. After he was summarily removed from office, the judge challenged the statute. The Montana Supreme Court discussed separation of powers principles and stated:

We find, therefore, that the provision ... which allows the removal of the police judge from office at the will of the city commission is a clear violation of the mandate of the doctrine of separation of powers. The city commissioners, acting as the legislative branch of city government, may not infringe upon the duties of the judicial branch. The power to remove the police judge following a ruling adverse to the city commission is an impermissible infringement upon the duty of each and every judge to render a fair and impartial decision.

*Id.* at 241, 570 P.2d at 889. We agree and hold that § 5–2–1 of the Goodyear and Superior town codes which permit removal of a magistrate at will violates Article III of the Constitution of Arizona.

The magistrates also contend that the town code provisions in question violate Article VI, § 32 of the Arizona Constitution, the second paragraph of which reads as follows [emphasis added]:

The jurisdiction, powers and duties of courts inferior to the superior court and of justice courts, and *the terms of office of judges of such courts* and justices of the peace *shall be as provided by law.* The Legislature may classify counties

and precincts for the purpose of fixing salaries of judges of courts inferior to the superior court and of justices of the peace.

A.R.S. § 22–403(A) provides:

The presiding officer of the police court shall be a police justice, who shall be selected in a manner provided by the charter or ordinances of the city or town. He shall receive such compensation as provided by the governing body of the city or town.

The magistrates argue that this statute implements Article VI, § 32 of the Arizona Constitution by delegating to the governing bodies of cities and towns the power and duty to provide by charter or ordinance for terms of office for magistrates. This delegation was made in light of Article VI, § 32's requirement that judges of courts inferior to the superior court—including police judges—have "terms of office ... provided by law." Thus, the magistrates conclude that the town ordinances violate Article VI, § 32 and that the towns must provide for a specific, definite "term of office" for the magistrates.

The towns' response is predicated on its assumption that town magistrates are town employees rather than judicial officers. They cite A.R.S. § 9–239(A), which provides [emphasis added]:

The common council may prescribe the duties and compensation of all officers of the town, and provide, by ordinance, the manner of filling vacancies in such offices. *The council may appoint*, from time to time, *officers and agents of the town* whose appointment is not provided for in this article, *and remove them.*

The town's position is that A.R.S. § 9–239 gives towns the power to create their own local courts which are outside the state's judicial system, that their magistrate courts operate solely as town agencies, and that therefore magistrates may be removed at will. Our earlier analysis concluded that magistrate courts are in fact within this state's judicial department and that town magistrates are judicial officers, not "officers and agents of the town" who may be removed from office at will. However, the question remains whether Article VI, § 32 of the Arizona Constitution requires that towns and cities prescribe a definite "term of office" for town magistrates.

The magistrates contend that simply because the Arizona Constitution permits the Legislature to establish terms for judges of courts inferior to the superior court does not mean that the Legislature is permitted to delegate to cities and towns any greater authority than the Legislature is allowed by that constitution. If Article VI, § 32 of the constitution requires that magistrates have specified terms of office, the Legislature cannot delegate to a town the power to appoint magistrates without specified terms.

The phrase "term of office" is not defined in the Arizona Constitution nor in the Arizona Revised Statutes. Elsewhere in our constitution where the words "term" or "term of office" are used, those words refer either to a specific period of years or to a period of time to be determined by some agency. *E.g.,* Article VI, § 3, which provides in part:

The chief justice shall be elected by the justices of the Supreme Court from one of their number for a *term of five years*, and may be reelected for *like terms.* The vice chief justice shall be elected by the justices of the Supreme Court from one of their number for a *term determined by the court.* [Emphasis added.]

No one contests that Article VI, § 32 of the Arizona Constitution allows the Legislature, or the town council, to specify a defined term of years for such magistrates. The questions are, first, whether any definite term is necessary at all, and second, if so, whether "at the pleasure of the council" qualifies as a definite term.

On the first question, the parties have not cited any authorities to guide us. The towns state in conclusory fashion that if the Legislature has not provided any spe-

cific term, an at-will term provided by the towns is sufficient. The magistrates respond that the language of Article VI, § 32 of the Arizona Constitution can only be fairly read as requiring some specific term. We agree that Article VI, § 32 requires that *some* term be "provided by law" which means that at least the maximum length of time a magistrate may serve must be capable of determination.

As for the second question, we find little authority to guide us. Many courts have defined "term of office" in various contexts to refer to a fixed period of time as distinguished from an individual's particular tenure in office, *see, e.g., Barber v. Blue*, 65 Cal.2d 185, 52 Cal.Rptr. 865, 417 P.2d 401 (1966), but "when specific holdings are scrutinized, few provide actual support for the proposition that 'service at the pleasure of' is not a 'term.'" *Buckalew v. Holloway*, 604 P.2d 240, 243 n. 12 (Alaska 1979). The facts in *Buckalew* are quite similar to those in the instant cases. Magistrate Holloway was removed from office under an Alaska statute providing that each magistrate "serves at the pleasure of the presiding judge of the superior court in the judicial district for which appointed." *Id.* at 241. The magistrate contended that this statute violated Article IV, § 4 of the Alaska Constitution, which provided that certain judges "be selected in a manner, for terms, and with qualifications prescribed by law." *Id.* The trial court found that magistrates were such judges but that service at the pleasure of the presiding judge failed to satisfy the requirement that judges be selected for terms prescribed by law. A divided Alaska Supreme Court reversed, holding that although "term" usually refers to a period of service that is fixed in time, in this particular context "term" merely meant "the time for which something lasts," *id.* at 244. Noting that in Alaska magistrates need no legal training and normally sit in communities with no other permanent judges, the court found that having magistrates serve "at the pleasure" of the presiding district judge

was "clearly designed to achieve an ongoing guarantee of accountability" and "to provide an unencumbered means of quickly remedying any situation in which judicial unfitness is impairing the administration of justice in rural Alaska." *Id.* at 244–45. The court rejected the contention that the statute violated judicial independence. Although the court recognized that "a judge who serves at another's pleasure does not enjoy complete independence," *id.* at 245, the court believed that the required independence was purely independence from *political* pressures, not from the influence of the appointed presiding judge who bears the responsibility for the administration of justice in that district. Two justices dissented, finding that service "at the pleasure" of an authority was "the very antithesis of designating a 'term.'" *Id.* at 247.

■ In comparing the facts in *Buckalew* with those in the instant cases, we note immediately that the town magistrates in the instant cases are appointed to their offices by, and subject to removal from office at the pleasure of, *elected* town council members, not by *appointed* members of the judiciary as in *Buckalew*. Each magistrate's tenure here is directly subject to the pleasure of the elected town council, which has executive and legislative rather than judicial powers and has the ability to impose political pressures on the magistrate. Although we believe the court in *Buckalew* strained the interpretation of "term" when applied to magistrates to fit the peculiar situation involved in that instance, the case would not support the position of the towns that appointment by nonjudicial authorities to serve "at their pleasure" constitutes a term. We hold that service by a magistrate at the pleasure of an elected executive or legislative body does not constitute a "term" for purposes of Article III and Article VI, § 32 of the Arizona Constitution.

■ We have concluded that town councils must set defined terms of office for

magistrates. Counsel for one of the towns argued below that if forced to set a defined term, the council could set a term at one month, or even one day. We have held that judicial independence requires that magistrates be insulated from arbitrary removal without cause, and that Article VI, § 32 of the Arizona Constitution requires defined terms for such magistrates. We find that judicial independence requires that magistrates have some length of time to be allowed to perform their judicial functions. We note that state legislators serve two-year terms, Article IV, part 2, § 21, Constitution of Arizona; the governor and other executive branch elected officials serve four-year terms, Article V, § 1, Constitution of Arizona; superior court judges serve four-year terms, Article VI, § 12, Constitution of Arizona; and justices of the peace serve four-year terms, A.R.S. § 22–102. We believe that any of these term lengths would be adequate constitutionally and that any term shorter than two years would compromise judicial independence and would not be constitutional.

The towns must choose a term length which strikes a balance between judicial independence on the one hand and political policy on the other hand. Of course, a magistrate may still be removed at any time for cause after a due process hearing.

■ Our determination in these cases will, of course, require the towns of Goodyear and Superior, and other towns with similar ordinances, to amend that portion of § 5-2-1 of their town codes which fails to set a defined term for the town magistrate. There is nothing unconstitutional about the creation of the magistrates' courts or the appointment of the magistrates; only the portions providing that the magistrates serve at the pleasure of the council are defective. The magistrates were therefore legally appointed but they were unconstitutionally deprived of the opportunity to serve for a defined term. Both magistrates sought identical relief in the superior court: they asked for a declaratory judgment that part of the town codes was unconstitutional, plus immediate reinstatement in office and back pay for the period between their dismissals and reinstatements. We hold that the towns must immediately reinstate the magistrates in office and award the back pay requested. When the towns have amended their town codes to provide for defined terms for magistrates, the towns are constitutionally obligated to allow these magistrates the opportunity to serve a full and complete new term, subject only to discharge for cause.

Our determination makes it unnecessary to consider many of the parties' other arguments. The magistrates alleged violations of their rights under the United States Constitution and under the federal Civil Rights Act, 42 U.S.C. § 1983. Our decision, however, is based on the Arizona Constitution's requirement of separation of powers and the necessity for judicial independence to preserve and protect that separation. *See generally Michigan v. Long*, 463 U.S. 1032, ——, 103 S.Ct. 3469, 3474–3478, 77 L.Ed.2d 1201, 1212–16 (1983). We therefore express no opinion concerning the alleged federal rights violations.

■ Finally, there is the question whether the trial courts acted properly in awarding attorneys' fees to magistrate Winter. In Winter's case, the trial court awarded him the full amount of legal fees requested plus costs of suit, but the court granted the town's application to stay the judgment pending conclusion of this appeal. On appeal, the Town of Goodyear protested certain portions of Winter's attorneys' fees, alleging that time expended in legal efforts which proved unsuccessful should not be rewarded, *Schweiger v. China Doll Restaurant, Inc.*, 138 Ariz. 183, 673 P.2d 927 (App.1983). The Town also asked that Goodyear be awarded its own fees and costs, both below and on this appeal. In Rua's case, the court ordered the parties to bear their own attorneys' fees and granted the town judgment against Rua for the costs of suit. On appeal, Rua requested

that this court award him attorneys' fees both for the action below and for this appeal.

Both magistrates alleged they were entitled to attorneys' fees pursuant to 42 U.S.C. § 1988 and A.R.S. § 12–341.01, both in the superior court and on appeal. Since our decision is based on Arizona constitutional and statutory rights rather than federal civil rights, 42 U.S.C. § 1988 is inapplicable here. A.R.S. § 12–341.01 provides that reasonable attorneys' fees may be awarded to the successful party in a contested action arising out of a contract, express or implied. The magistrates alleged that their actions arose out of their contracts of employment, justifying the award of fees under this section. We agree the award of attorneys' fees to Winter in the superior court was justified, and we find no abuse of discretion in the amount awarded.

The trial court's award of attorneys' fees to a successful party in an action arising out of a contract is permissive and within the trial court's discretion. In the case of Rua, he has become the successful party through this appeal, and pursuant to Rule 21, Rules of Civil Appellate Procedure, we grant his request for reasonable attorneys' fees in the superior court in an amount to be fixed by this court. Both Winter and Rua are awarded attorneys' fees on appeal in an amount to be fixed by this court pursuant to the rules of court.

The judgment of the superior court in No. 17332 is affirmed. The judgment of the superior court in No. 17474 is reversed and remanded with directions to grant judgment to the plaintiff in accordance with the views expressed in this opinion.

HAYS, CAMERON and FELDMAN, JJ., concur.

GORDON, V.C.J., concurs in the opinion of the court in No. 17474, Rua v. Acosta, et al. but he did not participate in the determination of No. 17332, Winter v. Coor, et al.