809 P.2d 428

CITY OF TUCSON, et al., Petitioners,

v.

SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF PIMA, Honorable J. Richard Hannah, a judge thereof, and Carmen Dolny, real party in interest, Respondents.

No. CV–90–0182–PR.

Supreme Court of Arizona,
En Banc.

Feb. 7, 1991.

Gabroy, Rollman & Bosse, P.C. by John Gabroy and Lyle D. Aldridge, Tucson, for petitioners.

Stompoly & Stroud, P.C. by Don Awerkamp and Mary J. Ryan, Tucson, for respondent Dolny.

## OPINION

GORDON, Chief Justice.

The City of Tucson (City) petitioned for review of the court of appeals' decision declining to accept jurisdiction over the City's special action. Because the issue presented is a pure issue of law that is of statewide significance, we accepted jurisdiction to determine whether communications submitted to a city commission created to make recommendations to the mayor and city council regarding the selection and reappointment of city magistrates are privileged from disclosure in a civil action brought by a former magistrate who was not reappointed. We have jurisdiction pursuant to Ariz.Const. art. 6, § 5(3), and Ariz. R.Sp.Act. 8, 17B A.R.S.

## FACTUAL AND PROCEDURAL BACKGROUND

The City has a Magistrate Merit Selection Commission (Commission) comprised of four lawyers and five public members from the two major political parties. The Commission reviews the applicants for appointment and reappointment to the city court, and makes recommendations to the Mayor and City Council (Council). In doing so, the Commission seeks comment from persons and agencies having frequent contact with the city court, including the police department, the prosecutor's office, and law firms providing criminal defense services. The Mayor and Council have discretion either to adopt or disregard the Commission's recommendations.

The real party in interest, plaintiff Carmen Dolny (Dolny), was a city magistrate who applied for reappointment in 1988. In

accordance with its usual procedure, the Commission solicited comment from persons and agencies having frequent contact with the city court. The Commission recommended against Dolny's reappointment, and the Mayor and Council appointed another person. Dolny then filed a civil rights suit in federal district court, but the suit was dismissed because the court determined, among other things, that Dolny had no protected property interest in continued employment.

Dolny then filed this lawsuit in state superior court. Her complaint alleges that (1) defendants breached an employment contract and tortiously discharged her, (2) certain defendants defamed her by making untrue statements to the Commission, (3) defendants violated the open meeting laws, and (4) certain defendants tortiously interfered with her employment. The City filed a motion for summary judgment, which apparently still awaits disposition by the trial court.

At issue here are Dolny's discovery requests. She requested oral communications regarding her performance as a magistrate, specifying the date and time of each communication, the name, address, and phone number of each person communicating, and the substance of each communication. She also requested all documents written about her to and by the defendants, all files they maintained on her, all documents concerning her performance, and all documents concerning the appointment of city magistrates within the last three years.

The City asserted that the communications submitted to the Commission were confidential, and that disclosure would destroy the Commission's ability to obtain comments in the future. Dolny moved to compel production of the requested documents and communications, and the trial court ordered disclosure. The City then petitioned for special action relief in the court of appeals, but the court declined to accept jurisdiction.

## DISCUSSION

The only issue raised in the petition for review is whether communications submitted to the Commission are privileged from disclosure in a civil action brought by a former magistrate. Despite not stating it as an issue for review as required by Rule 23(c) of the Arizona Civil Appellate Procedure Rules, 17B A.R.S., the City also argues that we should recognize an absolute privilege against defamation actions for communications to the Commission similar to the absolute privilege our court of appeals has already recognized for reports to the Commission on Judicial Conduct (formerly the Commission on Judicial Qualifications), *Bailey v. Superior Court*, 130 Ariz. 366, 636 P.2d 144 (App.1981), and for reports to the State Bar concerning the conduct of an attorney, *Drummond v. Stahl*, 127 Ariz. 122, 618 P.2d 616 (App.1980), *cert. denied*, 450 U.S. 967, 101 S.Ct. 1484, 67 L.Ed.2d 616 (1981). Dolny, in response, concedes that the communications at issue are conditionally privileged, but argues that the public's interest in the free flow of information to the Commission is not strong enough to justify an absolute privilege. Dolny also argues that even if we recognize an absolute privilege against defamation actions, this does not necessarily mean that submissions to the Commission should be privileged against disclosure.

■ The court of appeals declined to accept jurisdiction because the "sole issue ... presented to us [is] whether an evidentiary privilege prevents in all circumstances disclosure of communications to the Tucson City Magistrate Merit Selection Commission, and not whether there is an absolute privilege defense to a defamation action for those defendants against whom such a claim has been made...." We agree that the sole issue presented for review is whether an evidentiary privilege exists. Therefore, we leave for another day a decision on whether those providing information to the Commission enjoy an absolute or conditional privilege against defamation actions.

We turn now to the issue properly raised in the petition for review. The City argues that the materials submitted to the Commission should be privileged from disclo-

sure, and that this court has consistently recognized the need for confidentiality by requiring that material submitted to other commissions evaluating judicial applicants be kept confidential. *See* Rules of Procedure for the Commission on Judicial Conduct, Rule 5, 17B A.R.S.; Rules of Procedure for Judicial Nominating Commission on Appellate Court Appointments, Rule 3(d), 17B A.R.S.; Rules of Procedure for Judicial Nominating Commission on Maricopa County Superior Court Appointments, Rule 3(d), 17B A.R.S.; Rules of Procedure for Judicial Nominating Commission on Pima County Superior Court Appointments, Rule 3(d), 17B A.R.S. Dolny argues, however, that no constitutional provision, statute, procedure, rule, or policy supports a privilege for communications to the Commission.[1] The City counters that, even if no statute or rule of procedure supports such a privilege, Rule 501 of the Rules of Evidence does. We agree that Rule 501 supports a privilege.

Rule 501 provides:

> Except as otherwise required by the Constitution of the United States, the Constitution of Arizona, or by applicable statute or rule, privilege shall be governed by the principles of the common law as they may be interpreted in light of reason and experience, or as they have been held to apply in former decisions.

Ariz.R.Evid. 501, 17A A.R.S. The Arizona version of Rule 501 is very similar to Rule 501 of the Federal Rules of Evidence.[2] Thus, United States Supreme Court interpretations of the federal version of Rule

501 are persuasive, but not binding upon us, in interpreting Arizona's version.

The Supreme Court recently discussed the general principles relating to the creation of a privilege under Rule 501:

> We do not create and apply an evidentiary privilege unless it "promotes sufficiently important interests to outweigh the need for probative evidence...." *Trammel v. United States*, 445 U.S. 40, 51, 100 S.Ct. 906, 912, 63 L.Ed.2d 186 (1980). Inasmuch as "[t]estimonial exclusionary rules and privileges contravene the fundamental principle that 'the public ... has a right to every man's evidence,'" [citations omitted] any such privilege must be "strictly construed." 445 U.S., at 50, 100 S.Ct., at 912.
>
> Moreover, although Rule 501 manifests a congressional desire "not to freeze the law of privilege" but rather to provide the courts with flexibility to develop rules of privilege on a case-by-case basis, *id.*, at 47, 100 S.Ct., at 910, we are disinclined to exercise this authority expansively....

*University of Pa. v. EEOC*, 493 U.S. 182, ——, 110 S.Ct. 577, 582, 107 L.Ed.2d 571 (1990).

After discussing these general rules, the Court held that a university does not enjoy a privilege against disclosure of peer review materials that are relevant to charges of racial or sexual discrimination in tenure decisions. Dolny argues that the information sought in *University of Pennsylvania* is similar to the information sought here, and that Dolny's claims, as did the claims in *University of Pennsylvania*, outweigh

---

1. Dolny also argues that the Commission is analogous to the Commission on Judicial Conduct, which may recommend the censure, suspension, removal, or involuntary retirement of a judge. Dolny points out that while providing for confidentiality, the Rules of Procedure for the Commission on Judicial Conduct also provide for disclosure upon a written waiver by the judge under investigation. *See* Rules of Procedure for the Commission on Judicial Conduct, Rule 5, 17B A.R.S. Thus, Dolny believes that the communications at issue here should be disclosed. We reject this argument because the Rules of Procedure for the Commission on Judicial Conduct simply do not apply to the Commission in Tucson. Thus, we express no opin-

ion on the level of protection against disclosure provided by the Rules of Procedure for the Commission on Judicial Conduct.

2. Federal Rules of Evidence 501 provides, in relevant part:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience....

the asserted need for confidentiality. We disagree.

We believe that *University of Pennsylvania* is distinguishable for several reasons. First, one factor leading the Court to its decision in *University of Pennsylvania* was that "Congress has considered the relevant competing concerns but has not provided the privilege itself." *Id.* at ——, 110 S.Ct., at 582. Here, however, no evidence exists that either the courts or the legislature have considered the need for a privilege in connection with a *city* commission. Second, the Court in *University of Pennsylvania* reasoned that the Equal Employment Opportunity Commission's objective of "ferreting out this kind of invidious [racial and sexual] discrimination is a great if not compelling governmental interest ..." that requires disclosure. *Id.* at ——, 110 S.Ct., at 584. Here, however, we believe that a private litigant's interest in disclosure of communications to the Commission for the purposes of a civil action does not rise to this level. To the contrary, the compelling interest here is in maintaining the quality of city magistrates, who are a "part of the integrated judicial department of this state," *Winter v. Coor*, 144

Ariz. 56, 59, 695 P.2d 1094, 1097 (1985).[3] This interest is furthered by confidentiality, not by disclosure. Finally, the nature of the peer review process at issue in *University of Pennsylvania* was different from the process involved here. The people evaluating the performance of the untenured faculty members of a university, although possibly likely to temper their candor because of concerns about public disclosure, are not in a position to be retaliated against by the subject of their comments. Here, however, the prosecutors, defense lawyers, police officers, and court personnel who communicate with the Commission appear before city magistrates on a daily basis. Thus, they are vulnerable to retaliation, and are therefore likely to withhold comments if their comments are disclosed.

Although we agree with the general principles in *University of Pennsylvania* regarding the creation of evidentiary privileges, we reach a different result. Because the interests here weigh in favor of confidentiality, we hold that communications submitted to the Commission are privileged from disclosure in a civil action brought by a former magistrate.[4] In so

---

**3.** In addition to their jurisdiction over violations of city ordinances, magistrate courts have concurrent jurisdiction with the justice courts over state law violations committed within city limits. *Winter*, 144 Ariz. at 58, 695 P.2d at 1096 (citing A.R.S. § 22–402(B)). We have noted that "for many citizens of this state, the magistrate courts represent their only contact with the judicial system." *Id.* at 61, 695 P.2d at 1099. The large volume of cases handled by magistrate courts "underscores the necessity of maintaining magistrate courts as fair, independent, and impartial tribunals and the importance of preserving the public's perception of these courts as impartial and unbiased." *Id.*

**4.** Two federal cases, although not directly deciding whether an evidentiary privilege exists, support our conclusion by discussing the public policy concerns that weigh in favor of confidentiality. Both cases specifically discussed the confidentiality of communications submitted to city judicial commissions. In *Schwartz v. Mayor's Committee on the Judiciary of New York*, the Second Circuit stated:

The Committee can be of real assistance to the Mayor only if the sources of its information are kept confidential. Those who respond to the Committee's inquiries can be

helpful only if they feel free to say what they know without concern about embarrassment or retaliation. This is especially true of those who must continue to work with, and appear before, members of the judiciary. Consequently, the extent to which any candidate is advised of the details and the source of information relevant to judicial fitness must be left to the discretion of the Committee.

816 F.2d 54, 58 (2d Cir.1987).

A federal district judge used similar reasoning in granting a summary judgment against Dolny in the federal litigation that preceded the instant case. He wrote:

The Court finds any statements made to the Commission via letter, oral statement, submission of tapes or other materials during the pendency of the Commission's consideration of plaintiff's potential reappointment, an improper basis for this law suit. These statements were made in what was intended to be a strictly confidential environment.

Confidentiality of these proceedings is necessary to encourage open communication with the Commission. If persons making submissions to the Commission fear that their comments will lead to the necessity to defend a lawsuit the process will certainly become a sham.... Respecting the confidentiality of

holding, we are not exercising our authority to develop rules of privilege on a case-by-case basis "expansively." We are merely recognizing an evidentiary privilege because it "promotes sufficiently important interests to outweigh the need for probative evidence." *University of Pa.*, 493 U.S., at ——, 110 S.Ct., at 582 (quoting *Trammel*, 445 U.S., at 51, 100 S.Ct., at 912). Although "the public ... has a right to every man's evidence," *id.*, it has an even more compelling interest in encouraging the free flow of information to judicial review commissions in order to maintain the quality of this state's integrated judicial department. Thus, we seek to avoid what experience teaches—"that those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decision-making process." *See United States v. Nixon*, 418 U.S. 683, 705, 94 S.Ct. 3090, 3106, 41 L.Ed.2d 1039 (1974).

■ Arizona privilege law also supports this conclusion. To be privileged, a communication must meet four criteria: (1) it originates in a confidence that it will not be disclosed, (2) confidentiality is essential to the full maintenance of the relationship between the parties, (3) the relationship is one that the community believes should be fostered, and (4) the injury to the relationship that would occur from disclosure would be greater than the benefit gained by the aid given to the litigation. *Humana Hosp. Desert Valley v. Superior Court*, 154 Ariz. 396, 401, 742 P.2d 1382, 1387 (App.1987) (citing 8 Wigmore, *Evidence* § 2285, at 527 (McNaughton rev. 1961); 1 M. Udall & J. Livermore, *Arizona Practice: Law of Evidence* § 71, at 123–26 (2d ed. 1982)).

Communications to the Commission meet these criteria. First, even if the desire for confidentiality is not stated explicitly, common sense tells us that communications made by people who are vulnerable to retaliation from the person about whom they are communicating originate in a confidence that they will not be disclosed. Second, confidentiality is essential to the full maintenance of the relationship between the parties. Absent an ability to keep the communications to the Commission confidential, the Commission's greatest source of information, the attorneys and court personnel who must deal with city magistrates on a daily basis, will dry up.[5] Third, the relationship between the Commission and the people reporting to it is one that the community believes should be fostered. The Commission's ability to obtain information is crucial to maintaining the quality of the judges in this state's integrated judicial department, an interest already found in this opinion to be compelling. Finally, after carefully balancing the competing interests, we find that the injury to the relationship between the Commission and those communicating with it that would occur from disclosure would be greater than the benefit that would be gained by the aid given to the litigation. The destruction of the Commission's ability to obtain information related to the appointment and reappointment of city magistrates would be a greater harm than the benefit to a private litigant of being able to discover the communications.

the process further serves the public interest because many persons giving information are lawyers who have appeared, or may appear, before the magistrate.
*Dolny v. City of Tucson*, Civ. No. 89–107–TUC–WDB at 13 (D.Ariz. filed July 27, 1989) (order granting defendants' motions for summary judgment).

5. For example, the Chairperson of the Commission has stated:
    9. The Commission's ability to gather information for its use has already been hampered by instances of unauthorized disclosure, and by concerns arising from Judge Dolny's institution of federal civil rights litigation against persons alleged to have provided comment about her. At least one of the organizations contacted for comment on Judge Dolny's reappointment refused to comment because of the alleged disclosure of information on a magistrate who had previously been recommended for reappointment. Since the commencement of Judge Dolny's federal lawsuit, all of the agencies and firms that are routinely contacted ... have refused to participate.
Affidavit of Willie Lewis, Apr. 10, 1989.

### DISPOSITION

We reverse the trial court's order granting Dolny's motion to compel discovery and vacate the court of appeals' order declining to accept jurisdiction. We remand this matter to the trial court for proceedings consistent with this opinion.

CAMERON, MOELLER and CORCORAN, JJ., and J. THOMAS BROOKS, Court of Appeals Judge, concur.

FELDMAN, V.C.J., recused himself and did not participate in the determination of this matter. Pursuant to Ariz.Const. art. 6, § 3, BROOKS, Judge, Court of Appeals, Division One, sat in his stead.